2008 UT App 31

**SFR, INC., a Colorado corporation dba QED, Plaintiff, Appellee, and Cross–appellant,**

v.

**COMTROL, INC.; United States Fidelity & Guaranty Company; Atlas Electric, Inc.; and Azam Soofi, an individual, Defendants, Appellants, and Cross–appellees.**

**No. 20060915–CA.**

Court of Appeals of Utah.

Jan. 25, 2008.

---

Cass C. Butler and Michael D. Stanger, Salt Lake City, for Appellants and Cross-appellees.

Daniel L. Steele and Robert K. Reynard, Salt Lake City, for Appellee and Cross-appellant.

Before Judges BILLINGS, DAVIS, and McHUGH.

## OPINION

DAVIS, Judge:

¶1 Appellants Comtrol, Inc. and United States Fidelity & Guaranty Company (collectively, Comtrol) argue that the trial court erred by excluding certain evidence as a sanction rather than dismissing SFR, Inc.'s (SFR) lawsuit. Comtrol also asserts that the trial court improperly calculated post-judgment interest by using and compounding an 18 percent rate rather than applying the much lower statutory interest rate, *see* Utah Code Ann. § 15–1–4(3)(a) (2005). SFR cross-appeals, asserting that the trial court incorrectly calculated its award of attorney fees and the rate of interest to be applied to the fees and costs. SFR also argues that the trial court improperly estopped SFR from recovering against the payment bond an amount of $34,259.43 that SFR allowed Atlas Electric, Inc. (Atlas) to retain. We affirm in part and reverse and remand in part.

## BACKGROUND

¶2 Granite School District awarded Comtrol a construction contract for the Scott M. Matheson Junior High School (the Project) in Magna, Utah, on March 8, 2000. Comtrol obtained a payment bond for the Project. Comtrol then subcontracted with Atlas for electrical work in the final amount of $1,121,283.79. Atlas in turn purchased almost all of the necessary electrical compo-

nents from SFR. SFR and Atlas also had an agreement, which provided for, among other things, 18 percent interest on late payments for materials purchased on Atlas's account. At the time, Atlas was also purchasing supplies from SFR for other construction projects.

¶ 3 With the electrical work nearly complete, Atlas left the Project in February 2002 and subsequently went out of business. While Comtrol had paid Atlas the entire amount due under the electrical subcontract, SFR claimed that Atlas still owed $143,189.14 for the materials SFR had supplied Atlas. Comtrol asked in writing for an accounting of this claim. In response, SFR initiated this suit against Comtrol and Atlas on March 29, 2002. Comtrol counterclaimed for an accounting of the amount owed.

¶ 4 After years of discovery and mediation, trial was ultimately set for December 19, 2005. On November 21, 2005, and December 7, 2005, SFR provided Comtrol with checks, allocation instructions, and ship tickets (collectively, the Documents), which Comtrol had earlier requested. SFR admits that the failure to timely produce the Documents was improper.

¶ 5 In response to the late surrender of the Documents, Comtrol filed a Motion for Sanctions or, in the Alternative, Motion in Limine. In the motion, Comtrol "move[d] the [c]ourt pursuant to Rule 37 of the Utah Rules of Civil Procedure for sanctions against [SFR] or in the alternative move[d] for an Order in Limine preventing [SFR]'s use at trial of [the Documents]." In its supporting memorandum, Comtrol noted: "Rule 37 requires that [SFR] be prohibited from introducing [the D]ocuments in evidence. Rule 37 allows, however, for an even stronger sanction for such dilatory behavior, namely, dismissal of [SFR]'s case. Comtrol respectfully submits that such a sanction is warranted here."

Comtrol argued that the late production of the Documents was improper but failed to elucidate how Comtrol had been harmed by this withholding other than a conclusory statement that SFR's action had "prejudiced and interfered with [Comtrol's] ability to plan a defense strategy, conduct follow-up written discovery ..., and prepare expert witnesses."

¶ 6 In subsection D of its supporting memorandum, Comtrol also argued: "If this [c]ourt does not sanction [SFR] by dismissing its complaint, this [c]ourt should at least prevent [SFR] from profiting from its ... behavior."[1] This argument, however, was separate from and not in support of Comtrol's dismissal argument. Comtrol urged the trial court to "at least sanction [SFR] from profiting from its improper actions ... regardless of whether or not this [c]ourt allows the use at trial of [the Documents] or not." Importantly, the motion did not state that dismissal was the only proper course of action for the trial court to take. Rather, the motion gave the trial court an option by seeking, at a minimum, "an order prohibiting Plaintiff from using [the Documents] at trial" if the court did not agree that dismissal was warranted.[2]

¶ 7 After a hearing on December 16, 2005, the trial court granted Comtrol's motion, entering an order prohibiting SFR from using the Documents at trial.[3] The following business day, a bench trial ensued. On January 23, 2006, the trial court orally set forth its findings of fact and conclusions of law. The Revised Findings of Fact and Conclusions of Law and the Judgment were filed on June 13, 2006.

¶ 8 On October 2, 2006, the trial court filed its Amended Revised Findings of Fact and Conclusions of Law and its Amended Judg-

---

1. Comtrol argued that SFR profited by its actions because "During the 3½ years that [SFR] has withheld [the Documents], prejudgment interest has potentially accrued to [SFR]'s favor...."

2. Comtrol filed a second motion in limine regarding the Documents, which did not request a dismissal. But, during the hearing on the motions, Comtrol orally requested dismissal.

3. The trial court did not rule on subsection D of Comtrol's memorandum, nor do we address it. Further, Comtrol's "profiting" argument and the remedy therefore are unclear. Moreover, Comtrol did not argue subsection D on appeal, and we therefore also do not rule on that subsection.

ment,[4] finding that SFR had satisfied its burden of proving that it provided items for the Project for which it was not paid by Comtrol and awarding SFR $137,311.49 in principal, less $34,259.43 that SFR allowed Atlas to retain from a Comtrol check issued jointly to SFR and Atlas,[5] thus resulting in a principal award of $103,052.06. The court applied the 18 percent contract interest rate from the date of the judgment to both the principal and 18 percent prejudgment interest included in the judgment, and 6.37 percent postjudgment interest to the attorneys fees and costs. The trial court also reduced SFR's award of attorney fees and costs by 25 percent under the rationale that SFR had recovered only 75 percent of what it sought at trial.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Comtrol argues that the trial court improperly sanctioned SFR for its discovery violation. We review a trial court's remedy for discovery abuses under an abuse of discretion standard. *See Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.,* 2006 UT App 48, ¶ 9, 129 P.3d 287.

¶ 10 Comtrol also argues that the trial court improperly determined the postjudgment interest award. "We review the award of post-judgment interest, a question of law, under the correction of error standard." *Bailey–Allen Co. v. Kurzet,* 876 P.2d 421, 427 (Utah Ct.App.1994).

¶ 11 SFR argues that the trial court improperly decreased SFR's attorney fees award and the interest on that award. "Calculation of reasonable attorney fees is in the sound discretion of the trial court, and will not be overturned in the absence of a showing of a clear abuse of discretion." *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988) (citations omitted); *see also Chang v. Soldier Summit Dev.,* 2003 UT App 415, ¶ 13, 82 P.3d 203. Utah courts have repeatedly taken a "flexible and reasoned"

approach to determining the winning party. *See A.K. & R. Whipple Plumbing & Heating v. Guy,* 2004 UT 47, ¶ 14, 94 P.3d 270; *Mountain States Broad. Co. v. Neale,* 783 P.2d 551, 557 (Utah Ct.App.1989). "Essentially, this approach emphasizes 'the notion that courts should not ignore common sense when deciding which party prevailed.'" *J. Pochynok Co. v. Smedsrud,* 2007 UT App 88, ¶ 9, 157 P.3d 822 (quoting *Whipple,* 2004 UT 47, ¶ 11, 94 P.3d 270), *cert. denied,* 168 P.3d 1264 (Utah 2007).

¶ 12 SFR also argues that the trial court erred by applying the doctrine of estoppel to a joint check, from which SFR allowed Atlas to keep $34,259.43. The application of estoppel is "a classic mixed question of fact and law," one that "is simply stated, ... [yet is] applicable to a wide variety ... of fact-intensive circumstances," which "weighs heavily against lightly substituting our judgment for that of the trial court." *Department of Human Servs. ex rel. Parker v. Irizarry,* 945 P.2d 676, 678 (Utah 1997) (citing *State v. Pena,* 869 P.2d 932, 939 (Utah 1994)). Thus, we grant "a fair degree of deference when we review the mixed question of whether the requirements of the law of estoppel have been satisfied." *Id.*

## ANALYSIS

### I. Discovery Sanctions

¶ 13 "Rule 37(d) of the Utah Rules of Civil Procedure allows a court to impose sanctions against a party for disregarding discovery obligations even when that party has not directly violated a court order specifically compelling discovery." *Schoney v. Memorial Estates, Inc.,* 790 P.2d 584, 585 (Utah Ct.App.1990) (footnote omitted). And the trial court has "broad discretion" to select among "the full range of options" in deciding which sanction to apply to the violator. *Hales v. Oldroyd,* 2000 UT App 75, ¶ 18, 999 P.2d 588.

---

4. The Amended Judgment augmented the post-judgment interest from $50.82 per diem to $143.58 per diem based on revised calculations.

5. The trial court so held on a theory of estoppel, expressing reluctance to do so under the label of "the joint check rule" until the Utah Supreme

Court had "decide[d] if that rule exists [in Utah law]." In addressing the ruling, however, the court held that the joint check rule is "a good principle and is ..., in fact, the principle of law that's established here."

¶ 14 Broadly speaking, "[t]o show the trial court abused its discretion in choosing which sanction to impose, [Comtrol] must show either that the sanction is based on an erroneous conclusion of law or that the sanction lacks an evidentiary basis." *Wright v. Wright*, 941 P.2d 646, 650 (Utah Ct.App.1997) (citing *Morton v. Continental Baking Co.*, 938 P.2d 271, 274–75 (Utah 1997)). Nevertheless, "[t]he extreme sanction of default or dismissal must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited." *W.W. & W.B. Gardner, Inc. v. Park W. Vill., Inc.*, 568 P.2d 734, 738 (Utah 1977) (citing *Vac–Air, Inc. v. John Mohr & Sons, Inc.*, 471 F.2d 231, 234 (7th Cir.1973)).

¶ 15 Here, Comtrol asked for dismissal "or in the alternative move[d] for an order in limine preventing [SFR]'s use at trial of [the Documents]." The trial court chose Comtrol's second option—to impose the lesser sanction—and "[t]he choice of an appropriate discovery sanction is primarily the responsibility of the trial judge," *First Fed. Sav. & Loan Ass'n of Salt Lake City v. Schamanek*, 684 P.2d 1257, 1266 (Utah 1984). Given the breadth of discretion afforded to the trial court to select a remedy, we cannot say that the trial court's election of the lesser sanction was an abuse of that discretion.

¶ 16 In addition, even if imposition of the lesser remedy were an abuse of discretion, there are additional reasons for affirmance. First, Comtrol's motion for sanctions created a situation analogous to that of invited error. *Pratt v. Nelson*, 2007 UT 41, ¶¶ 17–22, 164 P.3d 366 (discussing the invited error doctrine). *See generally State v. Winfield*, 2006 UT 4, ¶ 15, 128 P.3d 1171 ("Our invited error doctrine arises from the principle that a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." (internal quotation marks omitted)). Second, notwithstanding Comtrol's conclusory assertion of harm, Comtrol did nothing to mitigate any such harm by seeking a continuance or requesting an opportunity to conduct further discovery. The trial court's order that prohibited SFR from using the Documents at trial did not prevent Comtrol from utilizing the Documents or seeking a continuance to further evaluate the Documents. Finally, a party cannot prevail on a claim first raised on appeal, *see Duke v. Graham*, 2007 UT 31, ¶ 26, 158 P.3d 540, yet, Comtrol argues for the first time on appeal that dismissal was the *only* acceptable remedy to SFR's discovery violation. Therefore, for the foregoing reasons, we affirm the trial court's exclusion of the Documents.

## II. Postjudgment Interest

¶ 17 While it is true that Comtrol and SFR do not have a contractual relationship with each other, the legislature chose to require general contractors to purchase a bond "for the protection of each person supplying labor, service, equipment, or material for the performance of the work provided for in the contract." Utah Code Ann. § 63–56–504(1)(b) (Supp.2007); *see also id.* § 14–2–1(3)(a) (2005) (defining the requirements of a surety bond). As such, SFR is an intended beneficiary of the surety agreement. *See Wasatch Bank of Pleasant Grove v. Surety Ins. Co. of California*, 703 P.2d 298, 300 (Utah 1985) ("[T]he contractor's bond was clearly intended to cover ... those who provided labor and materials to the subcontractor ...."). Further, Utah law states that a material provider "shall have a right of action on a payment bond under [section 63–56–504] for any unpaid amount due him if ... he has not been paid in full within 90 days after the last date on which he ... supplied the equipment or material for which the claim is made." Utah Code Ann. § 63–56–504(4). Accordingly, we hold that SFR is entitled to the contract interest rate—18 percent—on the principal amount due. *See Ron Case Roofing & Asphalt Paving, LLC v. Sturzenegger*, 2007 UT App 100, ¶ 9, 158 P.3d 556.

¶ 18 Utah Code section 15–1–4(2)(a) states that "a judgment rendered on a lawful contract shall conform to the contract and shall bear the interest agreed upon by the parties." Utah Code Ann. § 15–1–4(2)(a) (2005). This subsection applies to the principal amount due under the judgment until paid. Thus, interest at the contract rate is not recalculated from the date of entry of the judgment on the amount of the total judg-

ment where the total judgment includes interest at the contract rate on the principal. *See Watkins & Faber v. Whiteley*, 592 P.2d 613, 616 (Utah 1979) ("[T]he [trial] court [erred] in calculating the amount of the judgment [by] compound[ing] the interest ... on the unpaid amounts due.... Compound interest is not favored by the law."). We therefore affirm the trial court's award of prejudgment interest, but reverse and remand on the matter of postjudgment interest, instructing the trial court to award postjudgment interest at the contract rate on only the principal amount due.

## III. Attorney Fees and Costs

■■■ ¶ 19 SFR argues that because the contract between SFR and Atlas set forth an 18 percent interest rate for late payments on materials purchased, SFR is entitled to 18 percent interest on its attorney fees. However, in the contract, SFR does not include attorney fees under the umbrella of the 18 percent interest rate. Rather, the contract states that all late payments are subject to an 18 percent interest rate "*and* attorney[ ] fees which [SFR] may pay or incur in ... collect[ing] said debt and obligations." (Emphasis added.) The use of the word "and" in this context indicates that attorney fees were intended to be treated separately from overdue payments. Thus, the trial court's application of the statutory interest rate to SFR's attorney fees and costs was proper.

■■■ ¶ 20 SFR also argues that the trial court abused its discretion by reducing SFR's award of attorney fees and costs by 25 percent. We conclude that the trial court properly followed the flexible and reasoned approach we first described in *Mountain States Broadcasting Co. v. Neale*, 783 P.2d 551, 557–58 (Utah Ct.App.1989). The trial court "determin[ed] 'comparative victory' rather than simply which party won the net judgment," *A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, ¶ 12, 94 P.3d 270 (quoting *Mountain States*, 783 P.2d at 558), and also determined "which party ...

won a greater percentage of the amount it had claimed in damages or offsets," *id.* ¶.13. In so doing, the trial court ruled that SFR sought $137,311.49 in principal from Comtrol, but won only $103,052.06. Accordingly, the trial court deemed that SFR was the prevailing party and then properly reduced SFR's attorney fees by the percentage by which SFR did not prevail.

¶ 21 Further, *Chang v. Soldier Summit Development*, 2003 UT App 415, 82 P.3d 203, is analogous to the present case.[6] In *Chang*, "the trial court determined that [the d]efendants prevailed on two-thirds of the case brought by [the p]laintiffs and, accordingly, awarded [the d]efendants two-thirds of [their] attorney fees." *Id.* ¶ 21. On appeal, this court upheld that method of computing attorney fees. *See id.* ¶ 22. Therefore, we likewise affirm the trial court's reduction of the award of attorney fees and costs by the percentage of the claim on which SFR did not prevail.

## IV. The Joint Check Rule

■■■ ¶ 22 Although Utah courts have yet to address directly the issue of whether the acceptance of part payment from a joint check would be treated as a waiver of claims to the remaining portion of a joint check from the payor, other state courts considering this issue has adopted the joint check rule. *See, e.g., Brown Wholesale Elec. Co. v. Beztak of Scottsdale, Inc.*, 163 Ariz. 340, 788 P.2d 73, 76 (1990); *Post Bros. Constr. Co. v. Yoder*, 20 Cal.3d 1, 141 Cal.Rptr. 28, 569 P.2d 133, 135 (1977); *Iowa Supply Co. v. Grooms & Co. Constr., Inc.*, 428 N.W.2d 662, 666 (Iowa 1988); *Henry Prods. Inc. v. Tarmu*, 114 Nev. 1017, 967 P.2d 444, 445–46 (1998); *Anchor Concrete Co. v. Victor Sav. & Loan Ass'n*, 664 P.2d 396, 399 (Okla.1983); *City Lumber Co. v. National Sur. Corp.*, 229 S.C. 115, 92 S.E.2d 128, 131 (1956); *F. & C. Eng'g Co. v. Moore*, 300 S.W.2d 323, 326–27 (Tex. Civ.App.1957). The joint check rule provides the following: "When a subcontractor and his

---

**6.** The *Chang* court reversed and remanded on the *amount* of attorney fees since the trial court had not expressly considered the factors in *Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988). *See Chang v. Soldier Summit Dev.*, 2003 UT App 415, ¶ 24, 82 P.3d 203. The trial court here deemed the amount of attorney fees and costs to be reasonable. Because neither party contests the reasonableness of the fees themselves, we do not address this issue.

materialman are joint payees, and no agreement exists with the owner or general contractor as to allocation of proceeds, the materialman by endorsing the check will be deemed to have received the money due him." *Post Bros.*, 141 Cal.Rptr. 28, 569 P.2d at 135.

¶ 23 We join those states in adopting the joint check rule for the reasons explained by the Arizona Supreme Court:

> The joint check rule reflects a widespread practice in the construction industry that allows owners and general contractors to protect themselves from lien foreclosure by materialmen whom subcontractors have failed to pay. The issuance of a check payable jointly to the subcontractor and the materialman enables the materialman to withhold endorsement until he is assured that the subcontractor's account with him is or will be satisfied from the proceeds of the check. This may be accomplished in various ways, including the use of gentlemen's agreements or more formal escrow arrangements. The practice of issuing joint checks protects both the owner/general contractor and the materialman, because each has an interest in ensuring that the materialman is paid.

*Brown Wholesale Elec. Co.*, 788 P.2d at 76. Moreover, we have long held that "where one of two innocent parties must suffer a loss because of the misconduct of the third . . ., the law generally leans toward placing the loss upon the one who made the choice and created the circumstances out of which the loss came about." *G. Eugene England Found. v. Smith's Food King No. 6*, 542 P.2d 753, 755 (Utah 1975); *see also Valley Bank & Trust Co. v. Gerber*, 526 P.2d 1121, 1124 (Utah 1974); *Transfer Realty Co. v. Lichfield*, 84 Utah 163, 33 P.2d 179, 181 (1934).

This statement is essentially the joint check rule placed in a broader context.[7]

¶ 24 SFR cites a section of the Miller Act, 40 U.S.C. § 270b (2000), as a reason not to apply this doctrine, arguing that application would "profoundly restrict the ability of suppliers to assert claims against payment bonds." "State courts, however, uniformly have declined to apply Miller Act precedent to cases involving materialmen's liens, finding these decisions unpersuasive." *Brown Wholesale Elec. Co.*, 788 P.2d at 76–77 (citing *Iowa Supply Co.*, 428 N.W.2d at 666). We agree and hold that the Miller Act cases, to the extent they are analogous to the facts of this case, are not applicable to the joint check rule.[8]

¶ 25 SFR also argues that it could not accept the full amount of the check because Atlas's payments on the items covered by the check were not yet past due. However, SFR concedes that the $34,259.43 was due and owing. Invocation of the joint check rule does not require that the amount be past due.

¶ 26 Further, SFR opted to allow Atlas to retain $34,259.43 and then sought this sum years later from Comtrol with interest. Equity does not permit such an action. Comtrol is responsible to SFR for amounts due SFR that were not paid by Atlas but not for those amounts it had already paid jointly to Atlas and SFR. "The purpose of the [joint check] rule . . . is to protect the general contractor from having to pay twice . . . ." *Id.* at 77. That is, SFR, not Comtrol, must bear the risk if it does not accept full payment on a joint check amount due and owing.

## CONCLUSION

¶ 27 We affirm the trial court's ruling on discovery sanctions because there can be no

---

7. Contrary to SFR's arguments, two "courts have applied the joint check rule on the basis of estoppel. These courts explain that the material supplier, whose conduct has rendered the injury possible, is estopped from imposing the loss on the general contractor." *Brown Wholesale Elec. Co. v. Beztak of Scottsdale, Inc.*, 160 Ariz. 582, 774 P.2d 1372, 1375 (Ct.App.1989) (citing *Starkey Constr., Inc. v. Elcon, Inc.*, 248 Ark. 958, 457 S.W.2d 509, 518–19 (1970); *City Lumber Co. v. National Sur. Corp.*, 229 S.C. 115, 92 S.E.2d 128,

131 (1956)), *vacated on other grounds*, 163 Ariz. 340, 788 P.2d 73 (1990).

8. SFR's citation to *CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967, 968–71 (Utah 1989), is similarly inapplicable. *CECO* involved a subcontractor's refusal of the general contractor's offer to issue joint checks, *id.* at 969, not the endorsement of a joint check while giving part of the amount of the check to the other joint payee.

abuse of discretion when the court chooses from two alternatives presented by the moving party. Next, we determine that SFR is entitled to the contract interest rate on the principal amount due under the judgment, but SFR is not entitled to compounding of the prejudgment interest awarded; therefore, we reverse and remand to the trial court for recalculation of interest. We affirm the trial court's ruling reducing attorney fees and applying the statutory interest rate thereto as well as to costs. Finally, we also affirm the trial court's ruling reducing the principal amount due to SFR by adopting the joint check rule.

¶ 28 WE CONCUR: JUDITH M. BILLINGS, Judge and CAROLYN B. McHUGH, Judge.