

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-11-00198-CV

PLAINS BUILDERS, INC., ET AL, APPELLANTS

V.

STEEL SOURCE, INC., ET AL, APPELLEES

On Appeal from the 251st District Court
Potter County, Texas
Trial Court No. 95,423-C, Honorable Ana Estevez, Presiding

July 30, 2013

OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

This case arises from the construction of the Texas State Veterans' Home in Amarillo. Appellants are Plains Builders, Inc., and its surety Travelers Surety Company of America while appellees and cross-appellants are Steel Source, Inc., and Steel Source, a Division of Lloyd N. Moreau, L.L.C. (Steel Source). Plains Builders challenges an adverse money judgment in favor of Steel Source, Plains Builders and Travelers challenge a finding of liability on a payment bond, and Steel Source contends the trial court failed to award the full amount of its actual damages. We will reverse in part and render judgment that Steel Source take nothing from Plains Builders and

Travelers on the payment bond claim and otherwise affirm the judgment of the trial court.

## Background

Plains Builders, as general contractor for the construction of the veterans' home, subcontracted with Construction Services, a proprietorship, to furnish material and labor for the project. The recited value of the subcontract was $1,868,590. Construction Services in turn subcontracted to Steel Source a portion of the labor and materials it was to supply. The value of the Construction Services--Steel Source subcontract was $880,000. Of this amount, the parties allocated $550,000 for materials and $330,000 for labor. After the contracts were signed, Plains Builders, Construction Services and Steel Source signed a joint check agreement providing:

> Applicable to the products and services furnished by Construction Services to [Plains Builders] . . . and as a condition precedent to furnishing said materials for use and incorporation in the [veterans' home project], Construction Services requests that until it is paid in full, all payments made or to be made by [Plains Builders] to Construction Services with respect to this project, be made payable jointly to Construction Services and [Steel Source]. It is understood that all payments shall be timely and in the form of an immediate and unconditional instrument, specifically a Cashier's Check. Upon issuance of a check by [Plains Builders], it shall be promptly (within 3 business days) endorsed by Construction Services and delivered to [Steel Source]. It is understood that this is a continuing Agreement applicable to the original contract sum and any subsequent billing related to this project only.

Plains Builders issued five cashier's checks made jointly payable to Construction Services and Steel Source. Construction Services refused to endorse each joint check unless at the time of its endorsement Steel Source simultaneously delivered a cashier's check to Construction Services for a portion of the amount of the joint check.

As the veterans' home project progressed, Construction Services began experiencing significant cash flow problems. Joint checks were issued by Plains Builders in April and May 2006 for $125,557.83 and $125,337.49 respectively. At the time, Steel Source had submitted a draw of $237,000 to Construction Services. Steel Source retained $50,000 from the April check and a like amount from the May check but released the balance to Construction Services. According to Steel Source, it did so because Construction Services insisted, and because of the risk that work on the entire project would halt if Construction Services could not continue.

Through an undated letter bearing a June 1, 2006 fax date stamp, Construction Services then notified Plains Builders that it was "Discontinuing [the] joint checking agreement with [Steel Source]." According to the letter, the reason for the discontinuance was, "Failure to complete punch out and reframing. Construction Service (sic) had to reframe a lot of walls, studs and misc. work." At the time, Steel Source did not know Construction Services had sent the letter.

Following this notice letter, Plains Builders issued four checks totaling $80,000 to Construction Services as the sole payee and four checks totaling $134,151.78 to Construction Services and West Texas Builders, a supplier of materials, as joint payees.

Plains Builders finally discharged Construction Services from the veterans' home project and expended some $750,000 completing the work left unfinished and making up a payroll shortage of Construction Services. Steel Source asserted Construction Services failed to pay it amounts due totaling $137,300. According to Steel Source, had

Plains Builders issued all checks due Construction Services according to the terms of the joint check agreement, it would have received full payment.

Steel Source brought suit against Plains Builders, Travelers, and Construction Services.[1] A default judgment was taken against Construction Services. Steel Source moved for summary judgment on a claim that Plains Builders breached the joint check agreement to its damage. The trial court rendered a partial summary judgment in favor of Steel Source on liability but reserved the issue of damages for trial. After a bench trial, the court rendered judgment in favor of Steel Source and jointly and severally against Plains Builders and Travelers on a claim for retainage in the principal amount of $33,000 and against Plains Builders in the principal sum of $80,000 on the breach of the joint check agreement claim. Findings of fact and conclusions of law were filed. Plains Builders appeals and by cross-appeal Steel Source challenges the amount of damages it was awarded.

Analysis

Appeal of Plains Builders

Challenges to the Partial Summary Judgment

By its first issue, including multiple sub-issues, Plains Builders challenges the trial court's grant of partial summary judgment in favor of Steel Source.

We review the trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). A movant, on a traditional motion for

---

[1] The record indicates in a separate suit Plains Builders obtained a default judgment in the amount of $752,392.35 against Construction Services.

4

summary judgment on affirmative claims, bears the initial burden of showing its entitlement to judgment as a matter of law by conclusively proving each element of its cause of action. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). Only if the movant satisfies this burden does the burden shift to the non-movant to raise a genuine issue of material fact precluding summary judgment. *Id.*

A party seeking to recover for breach of a contract must prove: (1) the existence of a valid contract; (2) its performance or tender of performance; (3) the defendant's breach of the contract; and (4) damages sustained by the plaintiff as a result of the breach. *Valero Mktg. & Supply Co. v. Kalama, Int'l,* 51 S.W.3d 345, 351 (Tex.App.--Houston [1st Dist.] 2001, no pet.).

Plains Builders first asserts that the joint check agreement is not an enforceable contract because it lacks consideration.

> Joint check arrangements may be initiated by parties at the top or bottom of the contract claim. For example, the general contractor may wish to insure that the party receiving the check (e.g., the subcontractor) will properly disburse the proceeds of the check to his supplier or subcontractors. In this manner the general contractor reduces the chances that his subcontractor will pocket the money and leave the supplier unpaid, thus provoking the supplier to file mechanic's liens or make claims against the general contractor's payment bond.
>
> Similarly, the supplier or sub-subcontractor may initiate the joint check arrangement to make sure that the subcontractor won't run off with the progress payments and leave him out in the cold. The supplier may desire this arrangement because the subcontractor is in financial trouble or lacks assets, or because he has never done business with the subcontractor before. Sometimes, the supplier will request a joint check arrangement out of simple mistrust of him.

*City of Philadelphia for the use of Allied Roofers Supply Corp. v. Joseph S. Smith Roofing, Inc.,* 599 A.2d 222, 226 (Pa. Super. Ct. 1991) (quoting Barrett, Joint Check

Arrangements: A Release for the General Contractor and Its Surety, 8 Constr. Law. 7, 7 (1988)).

A contract must be based on a valid consideration; that is, mutuality of obligation. *Federal Sign v. Texas S. Univ.,* 951 S.W.2d 401, 408 (Tex. 1997). A contract lacking consideration is unenforceable. *Id. at* 409.

> Consideration is a present exchange bargained for in return for a promise. It consists of either a benefit to the promisor or a detriment to the promisee. The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment.

*Roark v. Stallworth Oil and Gas, Inc.,* 813 S.W.2d 492, 496 (Tex. 1991) (citations omitted); *Minton v. Riverside State Bank,* 399 S.W.2d 196, 198 (Tex.Civ.App.--Fort Worth 1966, no writ). What constitutes consideration for a contract is a question of law. *Brownwood Ross Co. v. Maverick County,* 936 S.W.2d 42, 45 (Tex.App.--San Antonio 1996, writ denied). The existence of a written contract presumes consideration for its execution; therefore, a party alleging lack of consideration bears the burden to rebut the presumption. *Doncaster v. Hernaiz,* 161 S.W.3d 594, 603 (Tex.App.--San Antonio 2005, no pet.); Tex. R. Civ. P. 94.

We do not find in the summary judgment record evidence sufficient to raise an issue of fact overcoming the presumption that sufficient consideration supported the joint check agreement. Moreover, by obligating itself to make payments by cashier's checks made payable jointly to Construction Services and Steel Source, Plains Builders incurred a detriment not otherwise required by its contract. In return, Plains Builders obtained a measure of security against a claim on its bond by Steel Source. And by the agreement, both Construction Services and Steel Source gained a measure of control

6

over payments made by Plains Builders of funds destined for the other. And, while placed in the position of having to receive and handle all funds paid Construction Services by Plains Builders, Steel Source gained a measure of assurance of payment on its subcontract with Construction Services. We find sufficient consideration supported the joint check agreement.

Plains Builders next argues summary judgment was improper because by its own terms the joint check agreement is not applicable to goods or services provided the project by Steel Source, and Plains Builders raised an issue of fact as to whether Steel Source sought as damages payment for goods or services it provided. The interpretation of the joint check agreement, however, is a question of law. No one asserts on appeal it is ambiguous. *Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 214 (Tex. 2011) (op. on reh'g) (noting when ambiguity is not raised by the parties, interpretation of a contract is a question of law). And we are shown no disputed material facts whose disposition is essential to the legal determination.

This particular joint check agreement does not contain provisions providing for allocation of the paid amounts between Construction Services and Steel Source; it merely requires payment to them jointly and requires Construction Services' endorsement. With regard to any issue of fact assertedly raised with regard to damages, we note the trial court denied Steel Source's motion for summary judgment as to the amount of damages.

Plains Builders next argues partial summary judgment was not proper because Plains Builders satisfied its obligations under the joint check agreement. It asserts the

7

joint check agreement ceased by its own terms when Construction Services was fully paid, and payment occurred "long before" Plains Builders stopped issuing joint checks.

The joint check agreement provides, "Construction Services requests that until it is paid in full, all payments made or to be made by [Plains Builders] to Construction Services with respect to this project, be made payable jointly to Construction Services and [Steel Source]." Plains Builders reasons that because it ultimately terminated Construction Services from the project and obtained a default judgment against it in the amount of $752,392.35, it may offset that amount against the sums Construction Services was due under its subcontract, leaving Construction Services "fully paid" "long before" the alleged breach of the joint check agreement by Plains Builders.

For two reasons, we cannot agree this assertion precluded summary judgment that Plains Builders breached the joint check agreement. First, the summary judgment record gives no indication that at the time Plains Builders issued checks to Construction Services contrary to the terms of the joint check agreement, Construction Services was fully paid. From the summary judgment record, it is undisputed that Plains Builders complied with the notice Construction Services sent terminating the joint check agreement. Its response to Steel Source's motion for summary judgment states it complied with the notice not because Construction Services was fully paid, but "[a]s the [joint check] agreement was for the benefit of Construction Services alone and because it did not prohibit the cancellation of the agreement[.]" Secondly, and similarly, we cannot see that the issue Plains Builders here asserts, that Construction Services was "paid in full" under the joint check agreement because Plains Builders later incurred costs to remedy its failure of performance under the construction contract, was

8

expressly presented in its response to the motion for summary judgment. *See* Tex. R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (requiring issues non-movant contends avoid movant's entitlement to summary judgment to be "expressly presented").

Plains Builders next argues it raised an issue of fact supporting its affirmative defense of payment. Plains Builders' checks made jointly payable to Steel Source and Construction Services totaled $1,223,275.71. Steel Source deposited these checks to its bank account. But it ultimately received only $806,410 because it remitted the remaining amount totaling $417,165.71 to Construction Services via cashier's checks. The maximum claim of Steel Source under its subcontract with Construction Services was $943,410. The fact it issued joint checks in amounts substantially more than Steel Source's maximum claim, Plains Builders argues, supports its affirmative defense of payment.

What Plains Builders is asserting here is application of the "joint check rule," which has expressly been adopted by several states. As restated by the California Supreme Court, the rule is that "[w]hen a subcontractor and his materialman are joint payees, and no agreement exists with the owner or general contractor as to allocation of proceeds, the materialman by endorsing the check will be deemed to have received the money due him." *Post Bros. Constr. Co. v. Yoder,* 20 Cal. 3d 1, 141 Cal. Rptr. 28, 569 P.2d 133, 135 (1977); *see Brown Wholesale Elec. Co. v. Beztak of Scottsdale,* 163 Ariz. 340, 788 P.2d 73, 76 (1990) ("when an owner or general contractor makes a materialman and a subcontractor joint payees on a check that includes payment for labor and materials furnished, and no other agreement exists between the materialman

9

and the owner or general contractor as to allocation of the proceeds, the materialman, by endorsing the check, will be deemed to have been paid the money due him, up to the amount of the joint check"); *SFR, Inc. v. United States Fidelity & Guaranty Co.,* 2008 UT App 31, ¶¶22, 177 P.3d 629; *Anchor Concrete Co. v. Victor Sav. & Loan Ass'n,* 1983 OK 60, 664 P.2d 396, 399 (applying rule). Among the cases cited by the Arizona, Utah and Oklahoma courts in support of the rule is the opinion of Justice Barrow in *F. & C. Engineering Co. v. Moore,* 300 S.W.2d 323 (Tex.Civ.App.--San Antonio 1957, writ ref'd n.r.e.). *Brown Wholesale Elec.*, 788 P.2d at 76; *SFR, Inc.*, 177 P.3d at 635; *Anchor Concrete*, 664 P.2d at 398.[2]

The cases we have reviewed in which the joint check rule has been applied are cases enforcing materialmen's liens or bonds securing payment or performance of the construction contract. *See, e.g., F. & C. Engineering*, 300 S.W.2d at 324; *Brown Wholesale Elec.*, 788 P.2d at 74; *Post Bros. Constr. Co.,* 569 P.2d 134. Our case, a suit based on breach of a joint check agreement, differs in that respect from all others we have reviewed. As noted, the joint check agreement the parties here signed does not address the subject of allocation of a check's proceeds between Construction Services and Steel Source. We agree with Steel Source that Plains Builders' argument in effect asks us to read into the joint check agreement a provision it does not contain. In the absence of contract language warranting the inference Steel Source had an obligation to retain funds necessary to keep its account current from each joint check as

---

[2] As the Arizona court pointed out in *Brown Wholesale Electric*, 788 P.2d at 76, federal courts have generally not followed the joint check rule in cases under the Miller Act, 40 U.S.C. § 270b.

issued, *Cf. F. & C. Engineering*, 300 S.W.2d at 326, we will not apply the joint check rule to support Plains Builders' payment defense.

Plains Builders next asserts Steel Source waived the right to recover damages for breach of the joint check agreement. Like its payment defense, Plains Builders' waiver argument is based on Steel Source's remission to Construction Services of parts of the proceeds of the joint checks issued in April and May 2006.

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co., Inc.,* 416 S.W.2d 396, 401 (Tex. 1967). Thus, establishing waiver of a contract right requires proof of intent to relinquish the right. *Johnson v. Structured Asset Servs., LLC,* 148 S.W.3d 711, 723 (Tex.App.--Dallas 2004, no pet.) (citing *Huffington v. Upchurch,* 532 S.W.2d 576, 580 (Tex. 1976)). We reiterate our observation that the joint check agreement the parties signed required joint payment but did not contain provisions addressing the division of a check's proceeds between the joint payees. In the absence of such provisions, and without application of the joint check rule,[3] we see in Steel Source's decision to permit Construction Services to retain part of the proceeds of the April and May joint checks no evidence of an intent on the part of Steel Source to relinquish its right to insist on Plains Builders' further compliance with the agreement, or its right to seek damages for its breach.

---

[3] Some courts have characterized the effect of the joint check rule as a waiver by the materialman of any claim against the payor to the amount of the joint check not retained by the materialman. *See SFR, Inc.*, 177 P.3d at 635.

Plains Builders next asserts it presented evidence raising an issue of fact on a theory that Steel Source is estopped to assert its claim against Plains Builders. The nub of the argument is "Steel Source should be estopped from asserting such claims because it knowingly concealed facts from Plains Builders that Plains Builders was entitled to know about. Had Plains Builders been made aware of this situation and the new agreement which Steel Source and Construction Services had entered into concerning payment from Construction Services to Steel Source, it could have ensured that the monies were properly paid."

Generally, equitable estoppel arises from conduct causing another party to materially alter its position in reliance on that conduct. *Tuscany Realty, Ltd. v. Tuscany Gardens, L.P.,* No. 02-07-0421-CV, 2009 Tex. App. Lexis 9871, at *9 (Tex.App.--Fort Worth Dec. 10, 2009, pet. denied) (per curiam, mem. op.). A party claiming an estoppel must prove: (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge or a means of obtaining knowledge of the facts, (5) who detrimentally relies on the representation. *Id.* at *9-10. A party may be estopped by its silence but only if it is "under a duty to speak, but refrains from doing so and thereby leads another to act in reliance on a mistaken understanding of the facts." *Casa El Sol-Acapulco, S.A. v. Fontenot,* 919 S.W.2d 709, 718 (Tex.App.--Houston [14th Dist.] 1996, writ dism'd by agr.). Here, the summary judgment record contains no evidence that Steel Source had a legal duty to disclose to Plains Builders how they allocated the proceeds of the joint checks between them. *Cf. Hoggett v. Brown,* 971 S.W.2d 472, 487 (Tex.App.--Houston [14th Dist.] 1997, pet. denied) (citing *Formosa*

12

*Plastics Corp. v. Presidio Engineers and Contractors, Inc.,* 941 S.W.2d 138, 146-47 (Tex.App.--Corpus Christi, 1995), *rev'd on other grounds,* 960 S.W.2d 41 (Tex. 1998)).[4]

Concluding the trial court did not err in rendering partial summary judgment finding a valid joint check agreement and finding Plains Builders breached the agreement, we overrule the Plains Builders' first issue.

Issues Arising from Trial

Plains Builders and Travelers assert Steel Source is not entitled to recovery on its payment bond claim because it did not provide timely notice of a claim for retainage, as required by statute. We agree.

Among its theories of recovery, Steel Source alleged Plains Builders and Travelers were jointly and severally liable for damages on Plains Builders' payment bond underwritten by Travelers. In the judgment, the trial court made two damage awards. As noted, Steel Source was awarded $80,000 for breach of the joint check agreement. Germaine to the present issue, Steel Source was also awarded $33,000, jointly and severally against Plains Builders and Travelers, for retainage on the payment bond claim.

"Chapter 2253 of the Texas Government Code, historically called the McGregor Act, requires a prime contractor on a public-work contract to execute a payment bond to

---

[4] As with its payment and waiver theories, Plains Builders' estoppel argument essentially is an effort to impose the joint check rule on the parties' joint check agreement. Some courts have used estoppel to characterize the operation of the joint check rule, explaining that the material supplier, whose conduct has rendered the injury possible, is estopped from imposing the loss on the general contractor. *See Starkey Constr., Inc. v. Elcon, Inc.,* 248 Ark. 958, 457 S.W.2d 509 (1970); *City Lumber Co. v. National Surety Corp.,* 229 S.C. 115, 92 S.E.2d 128, 131 (1956).

13

protect laborers and materialmen who work on or supply materials for the project." *Dealers Elec. Supply Co. v. Scoggins Constr. Co.,* 292 S.W.3d 650, 652 (Tex. 2009); Tex. Gov't Code Ann. §§ 2253.001-.079 (West 2008 & Supp. 2012). The McGregor Act defines "retainage" as the part of the payments under a public work contract that are not required to be paid within the month following the month in which public work labor is performed or public work material is delivered under the contract. Tex. Gov't Code Ann. § 2253.001(7) (West 2008). To recover in a suit under § 2253.073 on a payment bond for a claim for payment of retainage, a payment bond beneficiary whose contract with a prime contractor or subcontractor provides for retainage must mail written notice of the claim on a payment bond to the prime contractor and the surety on or before 90 days after the final completion of the public works contract. Tex. Gov't Code Ann. § 2253.046 (West 2008).

However, a payment bond beneficiary that does not have a direct contractual relationship with the prime contractor for public work labor or material must give "additional notice" in order to recover in a suit under § 2253.073 on a payment bond. Tex. Gov't Code Ann. § 2253.047(a) (West 2008). A payment bond beneficiary who contracts with a subcontractor for retainage must mail, on or before the 15th day of the second month after the date of the beginning of the delivery of public work material or the performance of public work labor, written notice to the prime contractor that the contract provides for retainage, and generally indicates the nature of the retainage. Tex. Gov't Code Ann. § 2253.047(b) (West 2008). The payment bond beneficiary must mail, on or before the 15th day of the second month after each month in which the labor was performed or the material was delivered, written notice to the prime contractor of a

14

claim for any unpaid public work labor performed or public work material delivered. A copy of the statement sent to a subcontractor is sufficient notice. Tex. Gov't Code Ann. § 2253.047(b) (West 2008).

The additional notice required for recovery by a payment bond beneficiary not having a direct contractual relationship with the prime contractor avoids a possible double payment obligation befalling a prime contractor and its surety when neither is aware of a subcontractor's retainage agreement with a claimant until after final completion of the contract. *See Keetch Metal Works of Dallas, Inc. v. Yates,* 378 S.W.2d 122, 124-25 & 125 n.1 (Tex.Civ.App.--Dallas 1964, no writ) (presenting hypothetical fact pattern illustrating consequence when prime contractor and surety are unaware of subcontractor's retainage agreement with claimant).

Steel Source asserts it is not subject to the additional notice requirement of § 2253.047 because it had a direct contractual relationship with Plains Builders. It argues the joint check agreement established the direct contractual relationship. We think the argument ignores the plain language of the McGregor Act. *See FKM P'ship Ltd. v. Bd. of Regents of the Univ. of Houston Sys.,* 255 S.W.3d 619, 633 (Tex. 2008) (construing a statute, court ascertains and gives effect to Legislature's intent as expressed by its language).

Steel Source's retainage claim was for its labor. Section 2253.073 authorizes suit by a "payment bond beneficiary who has provided public work labor or material under a public work contract for which a payment bond is furnished under this chapter." "Public work labor" is defined as "labor used directly to carry out a public work." Tex.

15

Gov't Code Ann. § 2253.001(5) (West 2008). The additional notice requirement of § 2253.047 applies to a payment bond beneficiary "who does not have a direct contractual relationship with the prime contractor for public work labor or material." The joint check agreement was not a contract between Steel Source and Plains Builders for labor used directly to carry out construction of the veterans' home. Steel Source had a contract for that purpose, but its direct contractual relationship for supplying labor and materials was with Construction Services, not the prime contractor. *Cf. Dial Block Co., Inc. v. Mastro Masonry Contractors,* 374 N.J. Super. 13, 863 A.2d 373, 378-79 (App. Div. 2004) (discussing and citing federal cases finding joint check agreement does not create direct contractual relationship required by federal Miller Act).

Because no direct contractual relationship existed between Plains Builders and Steel Source for its public work labor, the notice requirements of § 2253.047 apply to Steel Source's McGregor Act claim for retainage.

Steel Source submitted a draw for labor performed on the project during December 2005. Thus its notice under § 2253.047(b) to Plains Builders was due February 15, 2006. The earliest potential notice Steel Source points to in the record is a fax it sent Plains Builders dated March 1, 2006. Even were we to accept Steel Source's argument the fax could satisfy § 2253.047, it was not timely notice. Tex. Gov't Code Ann. § 2253.047(b) (West 2008).

We sustain the third issue of Plains Builders. Steel Source will take nothing by its claim against Plains Builders and Travelers for retainage on the payment bond.

Damages and Attorney's Fees

16

In its fourth issue, Plains Builders argues the trial court awarded a double recovery for breach of contract damages and retainage, the trial court's findings improperly incorporated its interlocutory summary judgment order, and no evidence supported an award of attorney's fees.

Because we will render judgment that Steel Source take nothing on its McGregor Act claim, we dismiss as moot Plains Builders' sub-issue claiming Steel Source received an improper double recovery from the McGregor Act award of $33,000 and $80,000 for breach of the joint check agreement. *See Trulock v. City of Duncanville,* 277 S.W.3d 920, 924 (Tex.App.--Dallas 2009, no pet.) (explaining mootness on appeal).

Plains Builders complains the trial court erred by making a conclusion of law incorporating by reference its interlocutory summary judgment. As a general statement, findings of fact and conclusions of law are not appropriate under summary judgment procedure because "if summary judgment is proper, there are no facts to find, and the legal conclusions have already been stated in the motion and response. The trial court should not make, and an appellate court cannot consider, findings of fact in connection with a summary judgment." *IKB Industries (Nigeria) Ltd. v. Pro-Line Corp.,* 938 S.W.2d 440, 441 (Tex. 1997). But the thrust of the complaint seems to be the trial court determined the breach of the joint check agreement by summary judgment but revisited the issue at trial. Even were we to assume the trial court erred by incorporating its summary judgment order into its post-trial conclusions of law, this record does not show the error was harmful. Tex. R. App. P. 44.1(a). We overrule this sub-issue.

Plains Builders next argues the trial court erred in awarding Steel Source attorney's fees because Steel Source failed to segregate recoverable attorney's fees from nonrecoverable fees and did not offer evidence meeting the *Andersen* factors. *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997).

Each of the two theories on which the trial court awarded Steel Source damages also authorized recovery of attorney's fees.[5] The attorney for Steel Source testified to the reasonableness and necessity of the attorney's fees sought, expressing his opinion that $34,200 was a reasonable and necessary fee. The parties stipulated that the hourly fee rate charged by Steel Source's attorney was reasonable. The attorney further testified a reduction in the total fee of ten percent would sufficiently segregate work for which fees were recoverable from work for which they were not.[6] The trial court found the attorney for Steel Source "properly segregated the attorney's fees and limited the amount of attorney's fees requested to claims for which such fees are allowed by law." The trial court further found $30,800 was a reasonable and necessary attorney's fee for the services of Steel Source's attorney in the trial court but further reduced the award to a total of $27,607.50 for such services.

In this bench trial, we think from the presentations of both sides the court was sufficiently apprised of the novelty and difficulty of the issues involved. The court received in evidence the detailed billing statements prepared by Steel Source's attorney. These identify the person performing the work and contain a brief description

---

[5] Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008); Tex. Gov't Code Ann. § 2253.073(b)(2) (West 2008).

[6] *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 313-14 (Tex. 2006) (approving evidence segregating fees by percentages).

of the work including the date, the amount of time spent on the task, the hourly billing rate applicable to the person performing the work, and the fee for the identified work. Steel Source's attorney was admitted to practice in Texas in 1985 and is board certified in civil appellate law. While the evidence did not touch on each of the *Andersen* factors, evidence of each of the factors was not required for the trial court to determine the reasonableness of the fees. *Arthur J. Gallagher & Co. v. Dieterich,* 270 S.W.3d 695, 706 (Tex.App.--Dallas 2008, no pet.) (citing *Lamajak, Inc.,* 230 S.W. 3d at 797).

On appeal Plains Builders also argues the award of attorney's fees must be reversed if we reverse one of the monetary awards for the breach of contract or McGregor Act claims because Steel Source did not segregate its fees between those claims. As the trial court found, attorney's fees were recoverable under either claim. We do not understand the authority Plains Builders cites, which includes *Gullo* and *Kosberg v. Brown*, 601 S.W.2d 414 (Tex.Civ.App.--Dallas 1980, no writ), to require segregation of fees in this circumstance. We overrule Plains Builders' sub-issue challenging the award of attorney's fees.

Cross-Appeal of Steel Source

By a single issue on cross-appeal, Steel Source argues the trial court erred by awarding it $80,000 on its breach of the joint check agreement claim rather than the $137,300 it sought. It points to the trial court's finding of fact that it furnished labor to the project for which it was not paid, totaling $137,300. But Steel Source was not entitled to damages measured by its loss under its contract with Construction Services, but those resulting from Plains Builders' breach of the joint check agreement, in other

19

words, those damages that were the natural, probable and foreseeable consequence of its failure to include Steel Source as a joint payee on eight checks. *See Abraxas Petro. Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex.App.--El Paso 2000, no pet.) (standard for damages for breach of contract). Steel Source's contention in support of its cross-appeal essentially is that the trial court's $80,000 award of damages for breach of the joint check agreement is not supported by factually sufficient evidence. Conducting such an analysis, we keep in mind the role of the trial court as trier of fact and sole judge of the credibility of the witnesses and the weight given their testimony, *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.), and keep in mind we may not substitute our opinion for that of the trier of fact merely because we might have reached a different conclusion. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex. 1988). We first examine all of the evidence, *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986), and, having considered and weighed all of the evidence, set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

Here, the evidence shows that including Steel Source as a joint payee was not a guarantee it ultimately would receive any particular amount. Other payees had their claims on the funds, and business considerations came into play when the joint payees allocated the check amounts between them. Steel Source allowed Construction Services to retain funds from the April and May 2006 joint checks not because it was entitled to them but because Construction Services insisted and Steel Source feared it

20

otherwise would be unable to continue work. The difficulty of evaluating the consequences of failing to include Steel Source as a payee on the final four checks is particularly great because, if Steel Source had been included, the checks would have had three payees.

After reviewing all of the evidence, we conclude that the trial court's damage award is not against the great weight and preponderance of the evidence, nor is it clearly wrong or unjust. *See Cain,* 709 S.W.2d at 176. We overrule Steel Source's sole issue on cross-appeal.

Conclusion

We reverse and render judgment that Steel Source take nothing on its bond claim for retainage from Plains Builders and Travelers. Otherwise, having overruled or dismissed the issues of Plains Builders and the sole issue of Steel Source on cross-appeal, we affirm the judgment of the trial court.

James T. Campbell<br>Justice