

## NUMBER 13-12-00252-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

RAILROAD COMMISSION
OF TEXAS,                                                          **Appellant,**

**v.**

GULF ENERGY EXPLORATION
CORPORATION,                                                     **Appellee.**

### On appeal from the 267th District Court
### of Calhoun County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez**

Appellant, the Railroad Commission of Texas (the "Commission"), appeals from a jury verdict in favor of appellee, Gulf Energy Exploration Corporation ("Gulf Energy"). By three issues, the Commission contends that: (1) "[t]here was no legally binding contract on May 19 or ever"; (2) "[t]he trial court erred by instructing the jury to consider whether

the [Commission's] negligence proximately caused the occurrence in question"; and (3) "the calculation of damages is wrong." We affirm.[1]

## I. BACKGROUND

Gulf Energy filed suit against the Commission and Superior Energy Services, L.L.C. for plugging and abandoning well 708S-5 after agreeing they would not do so. Prior to the suit, the Commission had determined that well 708S-5 had been abandoned by American Coastal Energy ("Coastal") and then ordered Coastal to plug it. Coastal filed bankruptcy. Gulf Energy, who had a lease from the Commission on the tract of land wherein the 708S-5 well was located, then agreed that it would provide a cash deposit of $400,000 to satisfy the eventual cost of plugging and abandoning the 708S-5 well, as well as other wells on the lease. Evidence was presented that the Commission agreed that if, among other things, Gulf Energy satisfied the $400,000 deposit and applied for the rescission of the Commission's plug order of the 708S-5 well, the Commission would postpone plugging it. The Commission entered into a contract with Superior to plug other wells on the same tract where the 708S-5 was located. However, no contract was entered for Superior to plug the 708S-5 well, and the evidence shows that the Commission intended to postpone plugging the 708S-5. It is undisputed that Superior wrongfully plugged the 708S-5 well due to errors in reading the map coordinates. Evidence was presented that Superior acted under direction of the Commission when it wrongfully plugged well 708S-5. The jury found that the Commission failed to comply with its

---

[1] As this is a memorandum opinion and the parties are familiar with the facts of the case, we will not recite them here except as necessary to advise the parties of this Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4. Moreover, we have already set out many of the basic facts regarding this case in a previous memorandum opinion. *See Railroad Comm'n of Tex. v. Gulf Energy Corp.*, No. 13–10–015–CV, 2010 WL 3049083, at **1–2 (Tex. App.—Corpus Christi Aug. 5, 2010, no pet.) (mem. op.).

2

agreement to postpone plugging well 708S-5 and that the Commission's negligence caused the wrongful plugging of the 708S-5 well.  This appeal ensued.

## II.    CHARGE ERROR

By its first issue, the Commission contends that the trial court erred by submitting question one to the jury because the "question erroneously assumes that [the Commission] entered into a legally-enforceable agreement to postpone plugging the well."  Question one asked, "Did the Railroad Commission fail to comply with its agreement to postpone plugging and abandoning the 708S-5?"

Without providing a legal analysis explaining why the trial court erred in submitting question one to the jury, the Commission then argues that the evidence was insufficient to support a finding that a valid and enforceable contract existed between it and Gulf.[2] Specifically, the Commission argues that Gulf "gave no consideration and was not bound by the 'contract.'"[3]  The Commission argues that "any contract would have been void and unenforceable" because the order to plug the well was not rescinded.  The Commission further argues that there was a mutual mistake making the agreement void and unenforceable.  Finally, the Commission argues that Gulf's and its "representatives at the May 19 meeting did not have authority to bind their employers."[4]

---

[2] The Commission cites no law regarding the standard of review and the law an appellate court applies when reviewing a trial court's refusal to submit a question to the jury, and we are not allowed to make the Commission's arguments.  *See Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.); *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied); *Leyva v. Leyva*, 960 S.W.2d 732, 734 (Tex. App.—El Paso 1997, no writ).

[3] We will address each of the Commission's arguments as we understand them to be.

[4] In its brief, the Commission cites the legal and factual sufficiency standards of review as the proper standard that we must apply to its issues.  However, in its argument section, the Commission complains that the trial court erred by submitting improper questions to the jury.  The proper standard of reviewing such error is not the legal and factual sufficiency standards.  *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (explaining that the proper standard of reviewing a trial court's decision to submit an instruction to the jury is an abuse of discretion standard).  Thus, we must apply the proper

By its second issue, the Commission contends that question eight "should not have been submitted to the jury. Question eight states, "Did the negligence, if any, of [the Commission] proximately cause the occurrence in question?" Specifically, the Commission complains that it did not owe a duty to Gulf "other than the duty arising under the alleged contract of May 19" and a "[b]reach of duty arising only under contract cannot support a negligence claim." According to the Commission, the trial court "never identified any other duty alleged to have been breached by [the Commission], so the court should not have submitted the negligence question to the jury." In its second issue, the Commission further contends that: (1) "[t]he Legislature did not waive immunity for [Gulf's] negligent supervision claim. That claim cannot support the jury question on negligence"; (2) "[a]s a matter of law, [Gulf] had no standing to complain about the [Commission's] alleged negligent damage to well 708S-5 because at the time of the mistaken plugging, [Gulf] did not have any ownership interest in the well and was not the operator of the well"; (3) "[t]he negligence question was improper because the statutory standard of care for plugging operations under Chapter 89 of the Natural Resources Code

---

standard of reviewing jury charge error.

Based on its argument that the trial court's charge was erroneous, the Commission then claims that the evidence is insufficient to support a finding that a contract existed. However, as further explained below, the jury was not asked whether a contract existed. Thus, our legal and factual sufficiency analysis only applies to the question actually asked in the jury charge. *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) ("[W]e must measure the sufficiency of the evidence based on the jury charge.") (citing *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005) (citing *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001) (providing that the evidence must be assessed "in light of the jury charge that the district court gave without objection"); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000) ("Since neither party objected to this instruction [regarding malice], we are bound to review the evidence in light of this definition."); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000))); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000) ("Since neither party objected to this instruction, we are bound to review the evidence in light of this definition."); *Osterberg*, 12 S.W.3d at 55 ("[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge.") (citing TEX. R. CIV. P. 272, 274, 278, 279; *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex. 1985); *Allen v. Am. Nat'l Ins. Co.*, 380 S.W.2d 604, 609 (Tex. 1964)).

4

is good faith. The standard preempts any negligence standard that may exist"; (4) the jury's answer to the complained-of question "necessarily found [the Commission] liable on a respondeat superior theory, so the question was improper" because "[t]he State is not liable in tort on a respondeat superior theory except by statute" and "[n]o statute imposes respondeat superior liability for wrongful plugging"; and (5) "[t]he trial court should have allowed evidence on Coastal's failure to have a required identification sign on the well and should have instructed the jury that Coastal was a responsible third party."

## A. Standard of Review and Applicable Law

We review a trial court's decision to submit or refuse a particular instruction or question to the jury under an abuse of discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). When a trial court acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles, the trial court abuses its discretion. *Moss v. Waste Mgmt. of Tex., Inc.*, 305 S.W.3d 76, 81 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Whether the charge submits the proper controlling issues in the case, in terms of theories of recovery or defense, is a question of law, that we review de novo. *Fin. Ins. Co. v. Ragsdale*, 166 S.W.3d 922, 926 (Tex. App.—El Paso 2005, no pet.).

"If an instruction might aid the jury in answering the issues presented, or if there is any support in the evidence for an instruction, the instruction is proper." *La.–Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998) (per curiam). "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009); *see* TEX. R. CIV. P. 277 ("In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions. The court shall submit such instructions

5

and definitions as shall be proper to enable the jury to render a verdict."), 278 ("The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence."); *see also Shupe*, 192 S.W.3d at 579 ("When a trial court refuses to submit a requested instruction on an issue raised by the pleadings and evidence, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict.").

To preserve a complaint of jury charge error for appellate review, a party must, at the risk of waiver, (1) present to the trial court a timely request, motion, or objection; (2) state the specific ground for the relief requested; and (3) obtain a ruling. TEX. R. APP. P. 33.1(a); *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("Under our procedural rules, the failure to raise a complaint at trial to a jury charge waives review of that complaint on appeal."). Requiring the preservation of error conserves judicial resources because it allows a trial court to correct an error before an appeal proceeds, and it promotes fairness among litigants. *In re B.L.D.*, 113 S.W.3d at 350 (citing and quoting *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) (per curiam)). "A party fails to preserve error in the jury charge when that party waives, or invites, the alleged error by acquiescing to submitting a theory that the party later claims is erroneous." *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 785 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing 34 T. Ray Guy, THE JURY CHARGE IN TEXAS CIVIL LITIGATION: TEXAS PRACTICE SERIES § 9.27 at 147 (3d ed. 2003)).

## B.    Question One

Question one in the jury charge asked, "Did the Railroad Commission fail to comply with its agreement to postpone plugging and abandoning the 708S-5?" The Commission complains on appeal that this question "erroneously assumes that the Railroad

6

Commission entered into a legally-enforceable agreement" with Gulf to postpone plugging the well.

### 1. Preservation

The Commission did not object at trial to question one on the basis it complains of on appeal. First, at the charge conference, the Commission argued as follows:

> The [Commission] reserves every defense except the defense of immunity from suit without legislative permission, so if that's the reason for it then that is actually a violation of the statute that allows us to even be here. With respect to—we'd also object to the failure to have a formation question with regard to the contract for the reasons we stated on the direct[ed] verdict.

> We'd also say that if there was a question then there needed to be a question to the jury if there's any facts regarding that. We would also state that it needs to also be very specific as to when the actual agreement was reached. When was there a meeting of the minds? With the way it's submitted now, it will allow a breach of contract prior to the meeting of the minds, which is antithetical to the law of breach of contract because it is vague and because also question one, the way it is worded, does not tie in when the actual agreement was reached and when the breach may have occurred would allow an unauthorized finding that a breach has to occur after the agreement has been reached, otherwise you have a separate issue, a separate type of cause of action, which there is no waiver of immunity for allowing that type of cause of action.

As shown above, the Commission requested an instruction regarding when a meeting of the minds occurred. The Commission's trial counsel stated, "[W]e'd also object to the failure to have a formation question with regard to the contract for the reasons we stated on the direct verdict." The Commission's trial counsel then requested that if such a question was provided to the jury, that question "need[ed] to also be very specific as to when the actual agreement was reached. When was there a meeting of the minds?" The Commission's trial counsel argued that

> [w]ith the way [question one is] submitted now, it will allow a breach of contract prior to the meeting of the minds, which is antithetical to the law of breach of contract because it is vague and because also question one,

7

the way it is worded, does not tie in when the actual agreement was reached and when the breach may have occurred would allow an unauthorized finding that a breach has to occur after the agreement has been reached, otherwise you have a separate issue, a separate type of cause of action, which there is no waiver of immunity for allowing that type of cause of action.

Thus, at the charge conference, the Commission did not object to question one on the basis that the question assumed that a contract existed.

Nonetheless, the Commission argues that it preserved its objections to the alleged jury charge error in its motions for directed verdict, judgment notwithstanding the verdict, and for new trial. However, the Commission cites no authority, and we find none, allowing a party to fail to object to a question submitted in the charge but then preserve error by objecting to the alleged jury charge error by filing either a motion for directed verdict or filing post-verdict motions, such as a motion for judgment notwithstanding the verdict or a motion for new trial. Therefore, we decline the Commission's invitation to conclude that it has preserved its jury charge error arguments regarding question one for our review. *See Dallas Cent. Appraisal Dist. v. Friends of Military*, 304 S.W.3d 556, 562 (Tex. App.—Dallas 2009, pet. denied) (agreeing that motions for directed verdict and judgment notwithstanding the verdict preserve a no-evidence issue for review but refusing to conclude that the filing of those motions preserves error in the jury charge). Thus, to the extent that the Commission claims that it preserved jury charge error by filing those motions, we overrule the issue.[5]

Next, the Commission claims that it preserved its complaint regarding question one within its written objections to the admissibility of certain evidence. However, the Commission cites no authority, and we find none, allowing preservation of jury charge

[5] Moreover, in its motion for judgment notwithstanding the verdict and its motion for new trial, the Commission did not complain that the trial court erred in submitting question one to the jury.

error by objecting to the admissibility of evidence. We have reviewed the Commission's written objections to the evidence, and the Commission did not specifically object to question one within those objections.[6]

We note that at the charge conference, the Commission's trial counsel stated, "With the Court's permission, I'd like to adopt all the arguments out of the directed verdict as well as the lot from Superior because I imagine the jury is probably getting impatient at this point." However, the Commission does not rely on any of Superior's jury charge arguments on appeal as a basis for us to conclude that it preserved the issues, and this Court is not allowed to make the Commission's arguments for it. *See Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) ("An appellate court has no duty–or even right–to perform an independent review of the record and applicable law to determine whether there was error."); *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied) ("[A]s judges, we are to be neutral and unbiased adjudicators of the dispute before us. Our being placed in the position of conducting research to find authority supporting legal propositions uttered by a litigant when the litigant has opted not to search for same runs afoul of that ideal, however. Under that circumstance, we are no longer unbiased, but rather become an advocate for the party."); *Leyva v. Leyva*, 960 S.W.2d 732, 734 (Tex. App.—El Paso 1997, no writ) (explaining that the failure to cite legal authority or provide substantive analysis of an issue waives the complaint).

---

[6] The Commission also claims that it preserved its complaints about question one because it "orally objected to the jury charge at the charge conference." However, the Commission did not make a specific objection that question one should not be submitted to the jury, and it did not complain that question one improperly assumes that a contract existed. Instead, it made the argument that in addition to question one, a question regarding when a meeting of the minds occurred needed to also be submitted to the jury.

9

Furthermore, even if the trial court allowed the Commission to adopt Superior's objections, error was not preserved. At the charge conference, Superior did not object to the trial court's submission of question one. And, Superior did not argue that a contract did not exist due to a lack of consideration, the plug order had not been rescinded, a mutual mistake occurred, or employees' lacked authority to bind their employers, as argued on appeal by the Commission.[7] Accordingly, we conclude that the Commission did not preserve it appellate complaints to question one.[8] *See Dallas Cent. Appraisal Dist.*, 304 S.W.3d at 562.

### 2. Harm

Even assuming, without deciding, that the Commission preserved its appellate challenge to question one, we may not reverse a judgment for charge error unless the error was harmful because it probably caused the rendition of an improper verdict.[9]

---

[7] To the extent that the Commission attempts to appeal from the trial court's denial of its motion notwithstanding the verdict, we conclude that issue is not adequately briefed. *See* TEX. R. APP. P. 38.1(h), (i).

[8] Moreover, it is the responsibility of the asserting party to request and tender a jury issue on its affirmative defenses. TEX. R. CIV. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."). Failure to object to the jury charge as given, or to request and tender a proper jury charge on the issue, waives any complaint relating to the affirmative defense on appeal. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 763 (Tex. App.—El Paso 2000, no pet.).

[9] Upon our own review of the record, we discovered that Superior's trial counsel did request submission of a question "regarding the existence of [an] agreement between Gulf Energy and the Railroad Commission to postpone the plugging of the 708S5 well or otherwise not to plug the 708S5 well at the time that that well was plugged." Superior's trial counsel also objected to question five on the basis that there was no evidence of an agreement between Gulf and the Commission. Question five asked, "Did Superior fail to comply with its agreement to avoid plugging and abandoning the 708S5?"

On appeal, the Commission has not referenced Superior's arguments at the charge conference, including Superior's request for a question regarding whether a contract existed, and we have been unable to locate Superior's proposed jury question and instruction in the record. See Barnett v. Coppell N. Tex. Court, Ltd., 123 S.W.3d 804, 817 (Tex. App.—Dallas 2003, pet. denied) ("An appellate court has no duty to search a voluminous record without sufficient guidance from an appellant to determine whether an assertion of reversible error is valid."). In addition, in its brief, the Commission does not refer to Superior's objection to question five.

10

*Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 225 (Tex. 2010); *see* TEX. R. APP. P. 44.1(a).  To determine whether the instruction probably caused an improper judgment, an appellate court is required to examine the entire case from voir dire through closing argument.[10]  *Transcontinental Ins.*, 330 S.W.3d at 225; *see TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 242–43 (Tex. 2010) ("Probable error is not subject to precise measurement, but it is something less than certitude; it is a matter of judgment drawn from an evaluation of the whole case from voir dire to closing argument, considering the state of the evidence, the strength and weakness of the case, and the verdict.").  Here, as further explained below, we cannot conclude that error, if any, was harmful.

At the charge conference, Gulf's trial counsel stated that at an "informal charge conference," the trial court ruled "that there was a contract, as a matter of law, formed between the Railroad Commission and [Gulf] before the well was plugged. . . ."  The trial court replied, "Correct."  However, there is no reporter's record of this informal charge conference.  Consequently, we will apply the presumption that the omitted portions of the record are relevant and support the judgment on appeal.  *See Wilms v. Americas Tire Co., Inc.*, 190 S.W.3d 796, 803 (Tex. App.—Dallas 2006, pet. denied) (citing *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex.1990) (providing that the burden is on the appellant to present a sufficient record to show error requiring reversal); *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987); *Marion v. Davis*, 106 S.W.3d 860, 869 (Tex. App.—Dallas 2003, pet. denied); *Birnbaum v. Law Offices of G. David Westfall, P.C.*, 120 S.W.3d 470, 476 (Tex. App.—Dallas 2003, pet. denied)); *Travelers Indem. Co. of R. I. v. Starkey*, 157 S.W.3d 899, 905 (Tex. App.—Dallas 2005, pet. denied) (presuming

---

[10] We note that the Commission neither argues nor explains how they were harmed by submission of question one or how its submission caused the rendition of an improper verdict.

11

that a missing exhibit supported a judgment when the exhibit was referenced in the trial court's findings of fact and appellant never attempted to supplement the record); *see also Luna v. Luna*, No. 13-11-00259-CV, 2012 WL 1073377, at *2 (Tex. App.—Corpus Christi Mar. 29, 2012, no pet.) (mem. op.) (same). Stated in terms of the harm analysis, we must presume that the omitted portions of the record are relevant to determining whether the trial court's submission of question one probably caused the rendition of an improper judgment. In the absence of these parts of the trial record, we are unable to find reversible error. Therefore, we overrule the Commission's first issue to the extent it argues that the trial court erroneously submitted question one to the jury.

### 3. Sufficiency of the Evidence

Based on its assertion that the trial court erroneously submitted question one to the jury, the Commission then argues that there is no evidence of an enforceable agreement because of the following: (1) there is no evidence that Gulf gave any consideration; (2) even if the Commission "made a legally binding contract[,] . . . such an agreement was void and unenforceable" because the order to plug the well had not been rescinded; (3) the contract was unenforceable due to mutual mistake; and (4) the Commission's and Gulf Energy's representatives lacked authority to bind their employers to the agreement. However, we must review the sufficiency of the evidence based on the question actually submitted to the jury. *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) ("[W]e must measure the sufficiency of the evidence based on the jury charge.") (citing *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005) (citing *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001) (providing that evidence must be assessed "in light of the jury charge that the district court gave without objection"); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000) ("Since neither party objected to this

instruction [regarding malice], we are bound to review the evidence in light of this definition."); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000))); s*ee Dallas Cent. Appraisal Dist.*, 304 S.W.3d at 562 ("[W]e judge the sufficiency of the evidence in light of the charge that was given."); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000) ("Since neither party objected to this instruction, we are bound to review the evidence in light of this definition."); *Osterberg*, 12 S.W.3d at 55 ("[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge.") (citing TEX. R. CIV. P. 272, 274, 278, 279; *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex. 1985); *Allen v. Am. Nat'l Ins.* Co., 380 S.W.2d 604, 609 (Tex. 1964)).

Here, the trial court submitted question one to the jury as follows: "Did the Railroad Commission fail to comply with its agreement to postpone plugging and abandoning the 708S-5?" The jury was not asked to determine whether an agreement actually existed, and, as stated above, the Commission did not object to the question one on that basis. Moreover, the Commission did not request any questions concerning the specific elements of a breach of contract claim, including whether there was any consideration.[11] Also, the Commission did not request questions regarding whether the agreement was

---

[11] The Commission did request an instruction regarding when a meeting of the minds occurred; however, on appeal, the Commission does not challenge the sufficiency of the evidence regarding when a meeting of the minds occurred. Thus, we will not address it.

However, in one sentence in its brief, the Commission states, "Therefore, the Court erred in submitting Question No. 1 to the jury because the question assumes that the parties entered into a binding agreement on May 19." To the extent that the Commission asserts that the evidence showed that a meeting of the minds did not occur until June 9, we conclude that assertion is inadequately briefed. *See* TEX. R. APP. P. 38.1(h), (i). The Commission also makes multifarious claims and assertions throughout its brief, without citation to authority. *See id.* We will not address these unsupported claims. *See Hamilton v. Williams*, 298 S.W.3d 334, 338 n.3 (Tex. App.—Fort Worth 2009, pet. denied) (noting appellate court may disregard any assignment of error that is multifarious).

13

void and unenforceable because the order to plug the well had not been rescinded, whether there was a mutual mistake, or whether Gulf's and the Commission's representatives had authority to bind their employers. *See* TEX. R. CIV. P. 279 (providing that it is the responsibility of the asserting party to request and tender a jury issue on its affirmative defenses and that failure to object to the jury charge as given, or to request and tender a proper jury charge on the issue, waives any complaint relating to the affirmative defense on appeal); *Sturm v. Muens*, 224 S.W.3d 758, 768 n.4 (Tex. App.— Houston [14th Dist.] 2007, no pet.) (explaining that the failure to raise a complaint at trial to a jury charge waives review of that complaint on appeal); *Osoba v. Bassichis*, 679 S.W.2d 119, 122 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Thus, the jury did not make such findings.[12] *See Barnes*, 353 S.W.3d at 764; *Osterberg*, 12 S.W.3d at 55.

Nonetheless, "[w]hat constitutes consideration for a contract is a question of law." *Plains Builders, Inc. v. Steel Source, Inc.*, 408 S.W.3d 596, 602 (Tex. App.—Amarillo 2003, no pet.) (citing *Brownwood Ross Co. v. Maverick County*, 936 S.W.2d 42, 45 (Tex. App.—San Antonio 1996, writ denied)). Consideration is a bargained-for present exchange in return for a promise. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991); *Cherokee Commc'ns, Inc. v. Skinny's, Inc.*, 893 S.W.2d 313, 316 (Tex. App.—Eastland 1994, writ denied). It may consist of a benefit that accrues to one party or a detriment incurred by the other party. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 315 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Roark*, 813 S.W.2d at 496). "The existence of a written contract presumes consideration for its

---

[12] The Commission does not challenge the sufficiency of the evidence supporting the jury's finding that the Commission failed to comply with the agreement; therefore we need not determine that issue.

14

execution." *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 224 (Tex. App.—Fort Worth 2009, pet. denied); *Plains Builders, Inc.*, 408 S.W.3d at 602–03. Therefore, a party alleging the lack of consideration bears the burden to rebut that presumption. *Plains Builders, Inc.*, 408 S.W.3d at 602–03 (citing *Doncaster v. Hernaiz*, 161 S.W.3d 594, 603 (Tex. App.—San Antonio 2005, no pet.)).

The Commission contends that Gulf Energy was not obligated to do anything to fulfill its alleged duties under the alleged contract. However, the evidence showed that when Coastal failed to plug the well, the responsibility to plug the well belonged to the Commission. The Commission had the duty to plug the well and then sue Coastal for reimbursement. The cost to plug the well was $275,000. The evidence established that Coastal filed bankruptcy because it could not afford to plug the well. So, when Gulf promised to re-establish production of the well and make it usable, the Commission would no longer be required to plug the well. Here, the trial court could have concluded that the Commission would have spent its own money to plug the well if Gulf Energy had not promised to re-establish the well. In fact, the Commission contracted with Superior to plug the other wells in the area—no contract to plug the well at issue was made because that well was mistakenly plugged.[13] Thus, when Gulf promised to take all of the necessary steps to make the well operational, the benefit the Commission received was not to spend state funds in the amount of $275,000 to plug the well.

Furthermore, the trial court could have concluded that the Commission's promise to postpone plugging the well and allowing Gulf Energy to take the steps necessary to re-establish production of that abandoned well benefitted Gulf Energy because Gulf Energy

---

[13] The parties all agreed at trial that Superior mistakenly plugged the well at issue.

15

would not have had the expense of constructing a new well in the area. Thus, we conclude that the trial court properly concluded that the Commission would have benefitted from Gulf Energy's promise to re-establish the well, and that Gulf Energy also benefitted from the Commission's promise not to plug the well. *See Walden*, 97 S.W.3d at 315. In other words, Gulf Energy's promise to make the well operational excused the Commission from spending state funds to plug the well and then sue Coastal for reimbursement, and the Commission's promise to postpone plugging the well benefitted Gulf Energy by saving it the expense of constructing a new well.

Furthermore, as previously stated, the existence of a written contract presumes consideration for its execution and the burden is on the party claiming that no consideration existed to rebut that presumption. *Frequent Flyer Depot, Inc.*, 281 S.W.3d at 224; *Plains Builders, Inc.*, 408 S.W.3d at 602–03. Here, the Commission and Gulf Energy executed a written contract. Thus, the burden was on the Commission to rebut the presumption that there was consideration. *See Plains Builders, Inc.*, 408 S.W.3d at 602–03. Without a reporter's record of the informal charge conference wherein the trial court ruled that a contract existed as a matter of law, we cannot conclude that the Commission met its burden. *Wilms*, 190 S.W.3d at 803; *Travelers Indem. Co. of Rhode Island*, 157 S.W.3d at 905; *see also Luna*, 2012 WL 1073377, at *2. We overrule the Commission's first issue to the extent that it argues that there was no consideration.

In its briefing of its first issue, as a sub-issue, the Commission states, "In the alternative, there is insufficient evidence to support the jury's answer to question no. 1, so this Court should reverse the judgment in favor of [Gulf] on its breach of contract claim against [the Commission] and remand for a new trial on the issue." This is the extent of the Commission's briefing on this sub-issue. When an appellant challenges the factual

16

sufficiency of evidence supporting an adverse finding and the appellant did not have the burden of proof at trial, then the appellant must demonstrate on appeal that there was insufficient evidence to support the adverse finding. *See Raw Hide Oil & Gas v. Maxus Exploration*, 766 S.W.2d 264 (Tex. App.—Amarillo 1988, writ denied). Here, the Commission has not provided any argument supporting a conclusion that the evidence is factually insufficient to support the jury's finding that it breached its agreement with Gulf and has not cited the record in support of such a conclusion. *See* Tex. R. App. P. 38.1(h), (i); *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 722–23 (Tex. App.—Dallas 2011, pet. denied) (concluding that the appellant's factual sufficiency challenge was inadequately briefed under similar circumstances to the Commission's brief in this case). Moreover, to the extent that the Commission makes the same arguments, as stated above, the jury was not asked to determine whether an agreement actually existed, and instead was asked to only determine whether the Commission breached the agreement. We overrule the Commission's sub-issue to issue one.

## C. Question Eight

By its second issue, the Commission complains that the trial court erred by submitting question eight, which asked, "Did the negligence, if any, of [the Commission] proximately cause the occurrence in question?" Specifically, the Commission argues that question eight was improper because: (1) it owed Gulf "no duty other than the duty arising under the alleged contract of May 19" and such a duty arising from a contract cannot support a negligence claim; (2) the legislature did not waive immunity for Gulf's negligent supervision claim; (3) "[a]s a matter of law, [Gulf] had no standing to complain about [the Commission's] alleged negligent damage to well 708S-5 because at the time of the mistaken plugging, [Gulf] did not have any ownership interest in the well and was not the

17

operator of the well"; (4) "the statutory standard of care for plugging operations under Chapter 89 of the Natural Resources Code is good faith" and that "standard preempts any negligence standard that may exist"; and (5) "[t]he State is not liable in tort on a respondeat superior theory except by statute" and "[n]o statute imposes respondeat superior liability for wrongful plugging. Finally, the Commission contends by a sub-issue that the trial court should have instructed the jury that Coastal was a responsible third party.

The Commission claims that it preserved error in the submission of question eight by: (1) objecting to the legal and factual sufficiency of the jury's responses in its motion for new trial; (2) arguing that there was no evidence and insufficient evidence to support the jury's answer to question eight; and (3) filing a motion for judgment notwithstanding the verdict. As explained above, the Commission cites no authority, and we find none, providing that by filing a motion for new trial or a motion notwithstanding the verdict, a party preserves a complaint that the trial court erroneously submitted a question to the jury. In fact, the authority we have found provides that those motions do not preserve jury charge error. *See Dallas Cent. Appraisal Dist.*, 304 S.W.3d at 562. The Commission further states that it preserved its charge error argument when it "orally objected to the jury charge at the charge conference." The Commission cites portions of the record wherein it made its arguments for a directed verdict. Again, as previously stated, there is no authority providing that a party preserves charge error by filing a motion for directed verdict. Also, at the charge conference, the Commission's trial counsel did not specifically object to question eight, and instead stated, "Question nine, again, we would adopt Superior's arguments as well as arguments of question eight." As previously stated, we cannot conclude that the Commission preserved error in the charge by adopting

18

Superior's arguments to question eight. However, we will assume without deciding, that the Commission adopted Superior's objections to question eight.

### 1.    No tort duty

The Commission first argues that the trial court should not have submitted a question on negligence to the jury because the only duty the Commission owed was a contractual duty. In other words, the Commission appears to argue that the economic loss rule bars Gulf Energy's recovery in negligence. However, neither the Commission nor Superior made this argument to the trial court. Therefore, this issue is not preserved.

### 2.    Waiver of Immunity

Next, the Commission argues that the "Legislature did not waive immunity for Gulf Energy's negligent supervision claim" and that claim "cannot support the jury question on negligence." Neither the Commission nor Superior made this argument to the trial court. Therefore, the issue has not been preserved.

### 3.    Standing

The Commission argues that "[a]s a matter of law, Gulf Energy had no standing to complain about the Railroad Commission's alleged negligent damage to well 708S-5 because at the time of the mistaken plugging, Gulf Energy did not have any ownership interest in the well and was not the operator of the well." This argument appears in the Commission's section regarding why the trial court improperly submitted question eight. However, the gist of the Commission's argument does not appear to be an attack on question eight. Instead, the Commission argues that because Gulf Energy was not the owner of the well at the time it was improperly plugged, Gulf Energy has no standing. However, the Commission then states, "Gulf Energy consequently has no standing to complain about the plugging, and the [trial court] should not have submitted the

19

negligence question to the jury." Thus, we construe the issue as being that because Gulf Energy had no standing, the trial court improperly submitted question eight to the jury. However, as previously stated, the Commission did not specifically object to question eight and instead adopted Superior's objections to question eight. Superior did not object to question eight on the basis that Gulf Energy was not the owner of the well. Therefore, to the extent that the Commission challenges question eight because Gulf Energy did not own the well, we conclude that argument has not been preserved.

However, because standing implicates subject-matter jurisdiction it can be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 443 (Tex. 1993). "The general test for standing in Texas requires that there '(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.'" *Id.* at 443–44 (quoting *Bd. of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955)).

The Commission argues that Gulf Energy lacked standing because there is "no authority for the proposition that one who obtains a mineral lease on a tract [of land] with an abandoned well thereby becomes the owner of or becomes responsible for the well [located on that land]. The only property rights in an abandoned well on state property are the operator's right to enter the property to remove its equipment and the operator's responsibility to enter the property to plug the well." However, the Commission cites no authority that a lessee has no property rights to an abandoned well on the land it is leasing from the State. Instead, the Commission requests that we read *Exxon Corporation v. Emerald Oil and Gas Company, L.C.*, 331 S.W.3d 419, 424–25 (Tex. 2011), and then "extend that ruling to the facts of this case." *See id.* (determining that based on the language of section 85.321 of the Texas Natural Resources Code and applying the

common-law principle that a purchaser of real property cannot recover for an injury to the property that occurred before he acquired his interest, the court concluded that Emerald lacked standing to bring a cause of action under Section 85.321 because it did not own an interest in the mineral leases when Exxon allegedly damaged the interest).

Moreover, the Commission acknowledges in its brief that although Gulf Energy did not own the well, it had a mineral lease in the tract of land where the well was located at the time the well was plugged. The situation here is different from the situation in *Exxon* because here, unlike the company in *Exxon*, Gulf Energy was not a subsequent mineral lease holder. As acknowledged by the Commission, Gulf Energy had a mineral lease when the well was plugged. Except for its bald assertion that a lessee has no ownership interest in the wells on the property leased, the Commission does not explain why a company that has a mineral lease has no standing to sue for damages due to negligent plugging of a well located on that property.[14] *See* TEX. R. APP. P. 38.1(h), (i).

Moreover, at trial, William Rhea, IV testified that he served as president and chief executive officer of Gulf Energy when it acquired a lease from the Commission to the tract of land wherein the 708S-5 well was located. Rhea testified that Gulf Energy owned four wells located on the tract of land it leased from the Commission, which included the 708S-

---

[14] We note that in *Railroad Commission of Texas v. Gulf Energy Exploration Corporation*, the Commission conceded that Gulf Energy had standing to bring its negligence cause of action. In that memorandum opinion, this Court noted the following:

> Gulf Energy pleaded that the lease went into effect in February 2007. The Commission states that as "long as [the Commission] maintains that the lese was entered into in February 2007, Gulf Energy satisfies the standing requirement for bringing injury-to-property claims. Accordingly, the Commission withdraws its argument that Gulf Energy lacks standing based on these pleadings."

No. 13-10-00015-CV, 2010 WL 2697147, at * n.1 (Tex. App.—Corpus Christi Aug. 5, 2010, no pet.) (mem. op.). The Commission does not complain that the lease did not go into effect as of February 2007, and now complains that Gulf Energy did not have standing because it lacked an ownership interest in the well.

21

5 well that Gulf Energy alleges was wrongfully plugged. The trial court admitted Gulf Energy's Exhibit 134, which is a memorandum from Gulf Energy to the Commission stating that Gulf Energy owns four inactive orphaned wells, which included the 708S-5—the well at issue here. The Commission cites no evidence in the record contradicting Gulf Energy's evidence that it did own the 708S-5 well when the Commission plugged it. Thus, we cannot conclude that Gulf Energy did not own the 708S-5 well as the Commission now claims on appeal. Thus, the Commission has not shown that Gulf Energy lacked standing in this case for that reason.

### 4. Definition of Good Faith

The record shows that at the charge conference, the trial court stated that it was overruling the Commission's objections to the charge and that it had "marked as refused the Railroad Commission's requested issues and instructions." The Commission makes no mention of this ruling and does not cite the record wherein the trial court made this ruling. However, we have located in the clerk's record a document entitled, "The Railroad Commission of Texas' Requested Items to be Included in Jury Charge." In this document, the Commission requested the following question and instruction:

> Did the Railroad Commission of Texas, and its employees and agents, act in good faith in carrying out its policy as stated below:

> Natural Resources Code, Section 89.001. Policy—The conservation and development of all the natural resources of this state are declared to be a public right and duty. It is also declared that the protection of water and land of the state against pollution or the escape of oil and gas is in the public interest. In the exercise of the police power of the state, it is necessary and desirable to provide additional means so that wells that are drilled for the exploration, development, or production of oil and gas, or as injection or salt water disposal wells, and that have been abandoned and are leaking salt water, oil, gas, or other deleterious substances into freshwater formations or on the surface of the land, may be plugged, replugged, or repaired by or under the authority and direction of the commission.

22

On appeal, the Commission contends that "[t]he negligence question was improper because the statutory standard of care for plugging operations under Chapter 89 of the Texas Natural Resources Code is good faith. The standard preempts any negligence standard that may exist. Furthermore, the evidence establishes that the Railroad Commission acted in good faith." The Commission then states that "[t]he statute does not provide guidance regarding which of several possible definitions of 'good faith' applies" and that the trial court did not hear argument on that issue because it refused to instruct the jury on it." The Commission does not cite to the record wherein the trial court refused to hear argument regarding which definition of "good faith" applies, and we have not located that event in the record. Finally, the Commission states, that it "suggests that the proper test for good faith under Chapter 89 is subjective honesty of belief." The Commission concludes, that "[i]f that is the standard, [subjective honesty of belief] then the Railroad Commission prevails because the evidence conclusively establishes that [its employees] honestly thought that the plugging was correct at the time."

We conclude that this issue is inadequately briefed. First, the Commission has failed to cite the record wherein the evidence conclusively established that its employees honestly thought that the plugging was correct at the time. Next, the Commission does not explain how *La Sara Grain Co. v. First National Bank*, 673 S.W.2d 558, 563 (Tex. 1984), the only authority it cites supporting its assertion that the trial court should have included the Commission's definition of good faith, is applicable to the facts of this case. Finally, we cannot determine how *La Sara* applies here.

*La Sara* involved whether a bank had breached the depository contract by paying checks only signed by an embezzler and without the second signature required by a corporate resolution. *Id.* at 561. The depositor in *La Sara* had failed to comply with his

23

duty to promptly examine his bank statements and report to the bank the discovery of any unauthorized signatures on checks that were cashed by the bank. *Id.* at 562. Because of the depositor's failure to report the unauthorized signature to the bank, the only claim the depositor could make was that the bank did not pay the checks in good faith. *Id.* The *La Sara* court explained that if the depositor proved that the bank did not act in good faith, the bank could not invoke the protection of section 4.406 of the Texas Uniform Commercial Code, which provides that the depositor had a duty to report unauthorized signatures to the bank. *Id.* The court then stated that section 1.203 of the UCC, defined good faith as "honesty in fact in the conduct or transaction concerned." *Id.* at 563.

Although the Commission has cited *La Sara* as setting out the proper definition of good faith, it does not provide any analysis regarding how the UCC's definition of good faith also applies to section 89.045, which provides that "The commission and its employees and agents, the operator, and the nonoperator are not liable for any damages that may occur as a result of act done or omitted to be done by them or each of them in a good-faith effort to carry out this chapter." Moreover, the Commission does not provide any citation to the record where it asked the trial court to include a definition of good faith in the jury charge. As set out above, the Commission requested a question asking whether the Commission, its employees, and agents acted in good faith. However, in requesting items to be included in the jury charge, the Commission did not request an instruction on the definition of good faith. Moreover, we have not located anywhere in the record where Superior requested the definition of good faith that the Commission argues should have been provided to the jury.

### 5.    Respondeat Superior Theory

Next, the Commission states that the "State is not liable in tort on a respondeat superior theory except by statute" and "[n]o statute imposes respondeat superior liability for wrongful plugging." The Commission asserts that the "jury's answer to the trial court's question [eight] necessarily found the Railroad Commission liable on a respondeat superior theory, so [] question [eight] was improper." However, at trial, no objection was made to question eight on the basis that the Commission now complains of on appeal. Therefore, we conclude that this issue has not been preserved for our review.

### 6.    Responsible Third-Party Instruction

By its last argument in issue two, the Commission contends that the trial court should have instructed the jury that Coastal was a responsible third party. The Commission claims that the evidence established that Coastal was a responsible third party, and the Commission cites evidence in the record it asserts supports such a conclusion. However, the Commission did not request a question regarding whether Coastal was a responsible third party. Moreover, the Commission provides no legal analysis explaining why the trial court abused its discretion by not submitting a question regarding Coastal being a responsible third party.

Finally, although "a trial court must submit a requested question to the jury if the pleadings and any evidence support it," *see* TEX. R. CIV. P. 278, a trial court does not abuse its discretion by refusing to submit a proposed jury question if there is no evidence to support its submission. *Greater Houston Radiation Oncology, P.A. v. Sadler Clinic Ass'n, P.A.*, 384 S.W.3d 875, 898 (Tex. App.—Beaumont 2012, pet. denied) (citing *Alaniz v. Jones & Neuse, Inc.*, 907 S.W.2d 450, 452 (Tex. 1995)); *Gibbons v. Berlin*, 162 S.W.3d 335, 341 (Tex. App.—Fort Worth 2005, no pet.) ("[A] trial court may refuse a tendered

25

question for two reasons:  (1) there is no evidence to justify the submission or (2) the issue is not pleaded.").  Here, the only portion of the record that the Commission cites in support of its claim that the trial court should have provided a responsible third party instruction is to the portion of the trial where Superior's trial counsel proffered evidence outside the presence of the jury.  The trial court admitted exhibits proffered by Superior "as a Court only exhibit for purposes of this bill" of review.  The exhibits were not admitted into evidence, and the jury was not present during the proffer.  In its brief, the Commission states, "The trial court refused to allow testimony on the issue."  The Commission apparently acknowledges that no evidence was actually admitted at trial regarding Coastal's alleged status as a responsible third party.  Moreover, the Commission does not cite to their pleadings or any other evidence in the record.[15]  *See* TEX. R. CIV. P. 278. Therefore, even assuming that the Commission had requested such an instruction, because there was no evidence to support its submission, we cannot conclude that the trial court abused its discretion by not submitting it.  *Greater Houston Radiation Oncology, P.A.*, 384 S.W.3d at 898; *Gibbons*, 162 S.W.3d at 341.  We overrule the Commission's second issue.

### III.  DAMAGES

By its third issue, the Commission contends that the award of damages is erroneous in several ways because:  (1) "Gulf Energy should not prevail on its breach of contract or negligence claims, so the jury's award should be reduced to zero"; (2) "Even if Gulf Energy should have prevailed, the jury should not have been instructed to award

---

[15] We have no duty to conduct an independent review of this voluminous record.  *See Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 817 (Tex. App.—Dallas 2003, pet. denied) ("An appellate court has no duty to search a voluminous record without sufficient guidance from an appellant to determine whether an assertion of reversible error is valid.").

damages for the cost of drilling a replacement well because those costs exceed the fair market value of the well immediately before it was plugged"; (3) "Even if Gulf Energy should have prevailed, the jury should not have been instructed to include loss of production in its calculation of damages"; (4) "The Court should not have allowed Gulf Energy to receive consequential damages on [its] breach of contract claim"; and (5) "The court's award of attorney's fees should be reduced to zero, or the case should be remanded for a new trial on the amount of attorney's fees."

The Commission provides no analysis for its first argument that "Gulf Energy should not prevail on its breach of contract or negligence claims, so the jury's award should be reduced to zero" and merely states, "[s]ee parts 1 and 2" of the brief. We have already overruled both issues one and two. Therefore, we overrule the Commission's third issue asking us to "See parts 1 and 2" of its brief.

Next, the Commission argues that because the jury allegedly concluded that the fair market value of the well before it was plugged was $10,000, Gulf was only entitled to that amount.[16] The Commission claims that "[w]hen a well is destroyed, the proper measure of damages is the cost of drilling the replacement well less any salvage value of the original well, as long as this cost does not exceed the reasonable cash market value of the well immediately prior to the occurrence in question." However, according to the Commission, "[i]f a well cannot be reproduced or if the cost of reproduction exceeds the value of the well, the proper measure of damages is the difference in the reasonable cash

___

[16] The Commission does not cite the record regarding when the jury found that the fair market value of the well prior to plugging was $10,000. However, the jury's answer to question twelve was $10,000. Question twelve asked, "What is the difference in the fair market value of the 708S-5 immediately before and immediately after the plugging and abandonment of the 708S-5?" The trial court instructed the jury as follows: "'Fair market value' means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling."

27

market value of the well, as equipped, immediately before and immediately after it was destroyed." Thus, the Commission claims that because the jury answered that that amount was $10,000, Gulf is not entitled to the 2.5 million dollars awarded to re-drill the well. Gulf responds that it was entitled to damages for its lost value of production because aside from having the right to sell the well, as the owner, Gulf also had the right to access and produce gas reserves.

The trial court submitted to the jury the following question on damages, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Gulf Energy for its damages, if any, that were a natural, probable, and foreseeable consequence of such failure to comply [with the agreement]?" The jury was then asked to set the amount in dollars and cents for the following: (1) "The cost of drilling and equipping a replacement well for the 708S-5."; (2) "The increase in royalty payments to the General Land Office"; and (3) "The lost value of reserves because of the delay in starting production from the 708S-5."

The Commission argues that "[e]ven if Gulf Energy should have prevailed, the jury *should not have been instructed* to award damages for the cost of drilling a replacement well because those costs exceed the fair market value of the well immediately before it was plugged." (Emphasis added). Thus, on appeal, the Commission is challenging submission of question two that asked the jury to determine "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Gulf Energy for its damages, if any, that were a natural, probable, and foreseeable consequence of such failure to comply," and 2a, which instructed the jury to determine the amount Gulf Energy was entitled to receive for the "[t]he cost of drilling and equipping a replacement well for the 708S-5." The jury found that the cost of drilling and equipping a replacement well was

28

2.5 million dollars. The jury also found, pursuant to question 2c that the lost value of reserves because of the delay in starting production was 4.5 million dollars. The jury awarded zero dollars, in answer to question 2c, for the increase in royalty payments to the General Land Office.

The Commission cites to *Atex Pipe & Supply, Inc. v. Sesco Production Co.*, as support for its claims that the trial court applied the wrong measurement of damages. 736 S.W.2d 914, 917 (Tex. App.—Tyler 1987, writ denied). In *Atex*, before addressing the merits of appellant's argument that the wrong measure of damages had been applied, the appellate court determined that the appellant had preserved its complaint by objecting to the trial court's question on damages submitted to the jury. *Id.* In *Atex*, the court relied on *Texas Power & Light Co. v. Barnhill*, 639 S.W.2d 331, 334–35 (Tex. App.—Texarkana 1982, writ ref'd n.r.e.). The court in *Texas Power* stated, "A complainant should indicate the proper measure of damages when objecting to the court's charge upon the measure of damages." *Id.* The *Texas Power* court concluded that the appellant had failed to request and tender a substantially correct explanatory instruction setting forth the guidelines it claimed applied to the measure of damages. *Id.*

Here, as we understand it, the Commission's argument hinges on whether the trial court properly instructed the jury to measure Gulf Energy's damages by determining the cost of drilling and equipping a replacement well and for the lost value of reserves because of the delay in starting production. However, in order to complain on appeal that the wrong measure of damages was applied, the Commission was required to object to questions 2a, 2b, and 2c on the basis that it was the wrong measure of damages. *See Am. Transfer & Storage Co. v. Reichley*, 560 S.W.2d 196, 199–200 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.) ("Unless a party objects to the charge on the ground that

29

it submits an improper measure of damages, he waives the objection and cannot complain on appeal that the charge permitted the jury to find damages based on the wrong measure."). The Commission did not do so.

Nonetheless, we are persuaded by our analysis in *Unique Staff Leasing, LLC v. Onder*, No. 13–09–00213–CV, 2010 WL 5621289, at *13 n.13 (Tex. App.—Corpus Christi Dec. 9, 2010, no pet.) (mem. op.), wherein we reached the merits of the appellant's claim despite its failure to preserve error. Thus, we will review the Commission's argument that it established the proper measure of damages in its brief. *See id.* (declining to find that the appellant had waived his challenge to the measure of damages submitted by the jury and addressing the merits of his arguments in an abundance of caution) (citing *Quigley v. Bennett*, 227 S.W.3d 51, 54 (Tex. 2007)). Here, the Commission cites case law regarding claims for products liability, breach of warranty, and negligence. However, the Commission does not provide any analysis supporting a conclusion that the proper measure of damages for a breach of contract claim only includes the fair market value of the well prior to its wrongful plugging. Instead, the Commission asserts that the damages awarded by the jury are consequential damages that required the element of foreseeability. Specifically, the Commission states that "[t]here is no evidence that $7 million in consequential damages was ever contemplated by the parties in this case" and that the jury's award of seven million dollars should be reversed. That is the extent of the Commission's claim. *See* TEX. R. APP. P. 38.1(h), (i). We will construe the Commission's above-stated claim as a claim that the evidence is insufficient to support a finding of foreseeability.

Gulf Energy points out that the jury was asked to only award those damages due to the Commission's failure to comply with the agreement that were reasonable and

foreseeable. Gulf Energy cites evidence in the record that it claims supports a finding that replacement of the well was a foreseeable consequence of the Commission's failure to comply with the agreement. The Commission couches the issue as whether there was evidence that the amount of the damages was foreseeable. However, we conclude that the issue is whether there was evidence that when the Commission entered into the agreement not to plug the well, it was foreseeable that Gulf Energy would have to build a replacement well.

The evidence showed that Gulf Energy agreed to re-establish production of the well by complying with a variety of requirements, including expending a large amount of money, and that the Commission agreed that if Gulf complied with its requirements, the well would not be plugged. It is undisputed that if the well had not been plugged, Gulf Energy would have extracted the reserves of the 708S-5 well. At trial, Sheila Weigan, who worked for the Commission, testified that plugging the wrong well is potentially a dangerous mistake. When asked if plugging the wrong well "blocks access to the reserves of gas to which that well had been drilled," Weigan replied, "It is cemented shut, so yes. . . . I don't know if it was 2,000 pounds, but, yes, when these wells are plugged that's our intent [to block access] so that they cannot leak." Weigan agreed that the intent in plugging a well is to abandon that well. Rhea testified that one of the Commission's requirements was to formulate a calculation of reserves that Gulf Energy believed would be extracted from the well. Rhea further testified that the 708S-5 well was the centerpiece of Gulf Energy's decision to go forward with the project, and that without that well, Gulf Energy would not have gone forward with this project. We conclude that based on the above-stated evidence, the jury was able to infer that when the Commission agreed not to plug the well, it was foreseeable that if the 708S-5 well was wrongfully plugged, Gulf

31

Energy would have to replace that well. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005) ("Whether a reviewing court starts with all or only part of the record, the court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it."). Thus, we cannot conclude that the evidence was insufficient to support the jury's finding of foreseeability.

Finally, the Commission contends that Gulf Energy was not entitled to attorney's fees because: (1) "Gulf Energy should not have prevailed on its breach of contract claim"; (2) "If this Court remands the breach of contract claim for new trial, or the amount of damages on the breach of contract claim for new trial, the Court should also remand the amount of attorney's fees for a new trial"; (3) "If this Court agrees that the evidence supports Gulf Energy's breach of contract claim, but renders judgment that damages should have been $10,000, then this Court should remand the amount of attorney's fees for a new trial"; and (4) "The jury's award does not segregate attorney's fees awarded for claims against the Railroad Commission from attorney's fees awarded for claims against Superior." As to the Commission's first through third arguments regarding attorney's fees, we overrule these contentions because the arguments all depend on this Court sustaining the Commission's other issues, which we have already overruled. As to the Commission's final assertion that the jury's award does not segregate attorney's fees, the Commission has not cited the record and has not provided a clear and concise argument with citation to authority in support of its assertion. *See* TEX. R. APP. P. 38.1(h), (i). Moreover, we are prohibited from making the Commission's argument for it. *See Valadez*, 238 S.W.3d at 845; *Plummer*, 93 S.W.3d at 931. We overrule the Commission's final issue.

## IV.   Conclusion

We affirm the trial court's judgment.

*/s/ Rogelio Valdez*
ROGELIO VALDEZ
Chief Justice


Delivered and filed the
29th day of May, 2014.